## BAKER *vs.* GILMAN and THURSTON.

The sole object of the statute, in declaring void conveyances made with intent to hinder, delay or defraud creditors, &c. is to protect, and prevent the defeat of, *lawful* debts, claims or demands, and not those which are unlawful, or trumped up, and which have no foundation in law or justice, and the verity, of which is never established by any judgment, or by the assent of the person against whom they are made. As against claims and demands of the latter class, the statute does not forbid conveyances or assignments, nor declare them void.

If, at the time a conveyance is made, there is no person competent to question its validity, the title will vest in the grantee absolutely, as against all the world. Subsequent creditors of the grantor cannot reach it, in such a case, as the foundation upon which their rights are held to attach to property once owned by their debtor does not exist. It is only when a conveyance is void, or voidable, as to creditors, when made, that subsequent creditors of the grantor can attack it on that ground alone. It is not, in such a case, a *bona fide* conveyance to the grantee, either as to prior or subsequent creditors.

The defendant, being sued in actions for slander, retained the plaintiff, an attorney, to defend those actions. Three days afterwards, the defendant conveyed his property to a third person, for the purpose of defeating the claims of the plaintiffs in the slander suits should any be established. Two days after this, the plaintiff was informed of such conveyance, by the grantor, and of its object. Only a small portion of the plaintiff's demand had then been earned. The plaintiff went on defending such actions, without objection, for more than a year, when they were determined in the defendant's favor. *Held* that the credit was not given by the plaintiff upon the faith of the defendant's ownership of the property conveyed; and that his demand being embraced in one judgment, recovered nearly two years after the conveyance, he was clearly a subsequent creditor of the defendant.

*Held, also,* that the plaintiff having, after being informed of the conveyance and the intent with which it was executed, made no objection, and asked for no security, but continued to render his services as attorney as he had began, with full knowledge of the whole transaction and of its character, he must be held to have assented to it, and to have consented to go on, and trust the defendant, upon the basis of the property being out of his hands and under the ownership and control of another.

A creditor, who has trusted his debtor after being fully informed by the latter that he has put his property out of his hands, by a conveyance valid as between him and his grantee, though voidable as to existing creditors, should not be allowed to come into court and claim that such conveyance was fraudulent and void, as to him, on account of such indebtedness.

As to such creditor, a conveyance of that kind would not be fraudulent, in any sense, and cannot be avoided on that ground.

APPEAL from a judgment entered upon the report of a referee. The action was brought by the plaintiff, as a judgment creditor of the defendant Gilman, to set aside a conveyance of real estate made by the latter to the defendant Thurston. The following facts were found by the referee, viz: That on or about the 26th day of July, 1862, two actions in the Supreme Court were commenced against the defendant Gilman, one by Gilbert Johnson, plaintiff, and the other by one Harriet C. Johnson, plaintiff; that the summons and complaint in each action were served on said Gilman on or about the day last aforesaid, and that the plaintiff in each action claimed damages on account of slanderous words alleged to have been spoken by said Gilman, &c.; that the plaintiff then was, and still continues to be, an attorney of this court; that on the 4th day of August, 1862, the said Gilman delivered the summons and complaint served on him in each action to the plaintiff, and retained him to defend said Gilman as his attorney in each action; that the plaintiff thereupon prepared an answer for said Gilman in each action, which answers were, on the 9th day of August, 1862, verified by said Gilman, and served by the plaintiff on the attorney for the said Johnsons in the said two slander suits; which suits were noticed for trial at several circuit courts held in the county of Monroe during the years 1862 and 1863, and at a circuit court held in said county in the month of October, 1863, the complaint in each action was, on motion of the plaintiff as attorney for said Gilman, dismissed, and judgment in each action perfected in favor of said Gilman for costs. That afterwards, and on the 11th of June, 1864, the plaintiff recovered a judgment against said Gilman before Henry E. White, Esq. then a justice of the peace of said county, for $180 of debt, and $1.98 costs, for services rendered by him as attorney for said Gilman in said two slander suits; that a transcript of such judgment was, on the same day filed, and the said judg-

ment duly docketed in the clerk's office of said county pursuant .to the statute; that execution was thereupon duly issued from said clerk's office, on said judgment, to the sheriff of said county, against the property of said Gilman, which was afterwards and on the 22d day of June, 1864, duly returned by said sheriff wholly unsatisfied. That at the time of the retainer of the plaintiff by said Gilman to defend him in the said two slander suits, to wit, on the 4th day of August, 1862, Gilman was the owner of the real estate described in the complaint, consisting of a house and lot of the value of $300, then occupied by him and his wife. That on the 7th day of August, 1862, the said Gilman and wife, for the consideration of $1, conveyed said house and lot to the defendant, Moses M. Thurston, by deed dated the 4th day of August, 1862, containing the usual covenant of warranty, &c. and recorded in Monroe county clerk's office, August 8th, 1862. That the said Gilman continued in the possession and occupancy of the premises till the spring of the year 1867, when he left, and the said Thurston has since that time been in possession. That at the time of the said conveyance the said Gilman was free from debt, except the liability to the plaintiff on account of the said retainers and the claim of liability to the Johnsons as aforesaid; and on the 9th day of August, 1861, Gilman informed the plaintiff of the said conveyance to Thurston, the amount of the consideration, and that such conveyance was made to put the property beyond the reach of the plaintiffs in the said slander suits. And the referee found that said conveyance was in fact made with the intent, on the part of said Gilman and said Moses M. Thurston, to put the property beyond the reach of any judgment or judgments that might be recovered in said slander suits or either of them. And that such conveyance was not made with intent to hinder, delay or. defraud any other then existing creditors of said Gilman or the plaintiff.

Baker *v.* Gilman.

And as a conclusion of law on the above facts, the referee found and determined that the plaintiff was not entitled to the relief demanded in the complaint, and that the complaint should be dismissed, with costs. And he directed that judgment be entered accordingly.

From the judgment so entered the plaintiff appealed.

*L. H. Hovey*, for the appellant. I. Upon the facts found, the conveyance in question was void as against the appellant, within the meaning, the letter and spirit of section 1, title 3, part, 2, chapter 7, of the Revised Statutes, which declares that "every conveyance * * made with intent to hinder, delay, or defraud creditors, or other persons of their lawful suits, *· * debts or demands, shall be void." 1. A contract was created between the appellant and Gilman on the 4th of August, and before the conveyance, by reason of the retainer by and of the appellant. This retainer imposed certain duties and obligations upon the appellant and upon Gilman, which would continue for such time as the retainer lasted, and which might extend through the whole subsequent history of the cases, as it in fact did. One of which obligations on the part of Gilman was, that he should and would compensate the attorney for all professional services he might thereafter render, which liability was limited only by the time covered during which these services were rendered, and their value, thus making the extent of Gilman's liability dependent upon two future contingencies. 2. The attorney was not bound to withdraw from the defenses, although he had notice of the conveyance. This notice was given to him August 9, by Gilman himself, with his explanation, which was evidently a palpable fraud. The transaction between Gilman and Thurston had been effected when this knowledge was communicated, and whether the appellant continued to act under the retainer or not, could not then or thereafter affect the validity of the conveyance, nor change the rights

of parties.    3. If the appellant was in any sense the creditor of Gilman, at any time before the conveyance, when did he cease to be so?   And if the conveyance (being fraudulent in fact in its inception,) was void, as to the appellant at that time, when did it become valid?   4. The appellant was not a party to the transaction, which resulted in the attempted conveyance, (as was the plaintiff in *Phillips* v. *Wooster*, 36 *N. Y. Rep.* 414,) and is not chargeable as being a party to the fraud.   It will be observed that from the referee's opinion, the decision against the appellant is put upon the sole ground that the appellant could "scarcely be regarded as a creditor of Gilman," at the time of the conveyance, and the learned referee subsequently adds: "Within the decisions above cited, it (the conveyance,) would have been equally void, as against the plaintiff's judgment, if the debt had been contracted without knowledge on his part of the conveyance."   Here, we submit, is the gist of the learned referee's error, in not recognizing the force of the contract of retainer, and the entering by the appellant upon the performance of his duties, under it in good faith, and in ignorance of the conveyance, which was not in fact made until some days after the appellant had undertaken his duties; and we submit that the appellant was justified in continuing to act under the retainers, and in treating the conveyance, upon the statements of Gilman himself, as a nullity.   In one view the force of the contract of retainer draws to it all that was done subsequently under it; thus making the appellant to stand in the eye of the law at all times as of the time of entering into the contract, and equity says that a debtor shall not be permitted to voluntarily place his property in a situation so that he can use it and yet have it shielded from paying his just debts.   The principle contended for under this point is also sustained, we think, by *Van Wyck* v. *Seward*, (18 *Wend.* 375,) viz: "A party bound by a contract, in virtue whereof he may become liable to the

Baker *v.* Gilman.

payment of money, *although his liability be contingent,* is a *debtor* within the meaning of the statute, avoiding all gifts, &c. made to delay, hinder or defraud creditors." 5. The position taken by the learned referee, in his opinion where he says, "and the whole services constituting *one entire debt,* I do not see how it can be separated so as to avoid the conveyance as to a part," is not free from embarrassment. He concedes the *indebtedness* to be *entire.* Therefore, had the appellant stopped short of the period, which ended the suits at any stage of their pendency, the indebtedness for the then past services would have also been *entire.* Had he stopped at the point of being informed of the conveyance it would have been *entire.* Could not the appellant, at the point of time last referred to, with a judgment afterwards rendered against Gilman for such indebtedness, on the remaining facts as found in this case, have reached this real estate, and would not this conveyance have been held to be fraudulent as against him? Most certainly. If so, then the portion of the indebtedness which existed prior to, and at the time of, the notice of the conveyance, and for which the learned referee has conceded that the appellant would be entitled to have the conveyance set aside (the indebtedness being also entire) must inevitably draw after and raise to a level with it that portion of the indebtedness which *by virtue of the relationship of the appellant and Gilman* was subsequently created. There is no injustice in this, and no law against it. Again, to try this matter in another way, suppose Gilman, after this notice, without revoking his retainer, and after the appellant had earned more under it, had put an end to the contract of retainer, or had refused to pay the appellant for the then past indebtedness under it, could not the appellant have set aside this conveyance and collected the whole of it by reason of the *entirety of the original contract between them,* and the *entirety* of the *indebtedness created under it?* If then the appellant at the point of time of,

receiving the notice, was entitled to have this conveyance declared fraudulent as against him as an existing creditor for the then existing indebtedness, *and we claim he was,* then is he also for like reasons entitled to accomplish the same thing for the remaining and subsequently accrued portion of the indebtedness.   1st. Because of its *oneness.;* and, 2d. Because of the indivisible nature of the services under the contract of retainer which constituted the *root* of the indebtness.   If this be not so, then one of the very mischiefs, viz. a conveyance made to hinder, &c. *creditors or other persons* of their lawful suits, damages, forfeitures, debts or *demands,* sought to be prevented by the statute, is allowed to prevail.   Because the *demand* of the appellant *originated with and by the retainer, which was an entire contract, and his performing services under it;* and the *nature* of the demand was at no time thereafter changed.   It is difficult to reconcile the conclusion arrived at by the learned referee with his own views.   He says, substantially, the appellant is entitled to have the conveyance set aside for that portion of the indebtedness which existed at the time of the notice, but that, not being able to see how the indebtedness can be separated, he says, in effect, that the appellant cannot recover for the former portion of the indebtedness, because the debtor owes him more on account of the same matter.   Again, suppose A. and B. enter into an executory contract, and B. goes on and makes part performance; A. after the contract, and after B. has partly performed, refuses to recognize the contract, having first, before the refusal, conveyed his property, as did Gilman.   Would not B. be entitled to his action sounding in damages? and would he not be considered, by virtue of the contract, a creditor of A. at the time of such conveyance, although the demand for damages arose *dehors* the contract?   We insist he would; much more is the appellant.   Or, suppose B. receiving notice of such conveyance, still goes on and completes the performance of the contract, would he not be

**33**

entitled to his action for the stipulated compensation, and be held to be a creditor of A. as to the *whole amount* of compensation, at the time of such conveyance, by relation?

II. The learned referee has found, as matter of fact, that the conveyance in question was made with intent to defeat the recovery of any judgment in the slander suits. The actions were pending at the time of this conveyance, and the conveyance, upon the authority of *Jackson* v. *Myers*, (18 *John.* 425,) was void as to the plaintiffs in those actions.

III. When the case of *Savage* v. *Murphy*, (34 *N. Y. Rep.* 508,) was decided at the general term, the court said: "The statute (above partially quoted) is comprehensive, and includes subsequent as well as prior creditors. Such is its received construction;" citing *Holt* v. ——, *Hoff.* 79,) and *Carpenter* v. *Roe*, (10 *N. Y. Rep.* 227; *see the opinion in vol.* 234, *cases in Court of Appeals, p.* 429, *State Library.*) And in that view, if the appellant is to be considered purely a *subsequent* creditor, the chancellor, in *King* v. *Wilcox*, (11 *Paige*, 594, says, "Upon a full examination of all the cases, the legal principle appears to be established that when a voluntary conveyance is executed and received, with actual intent to defraud the then existing creditors of the grantor, it is not a *bona fide* conveyance, which can protect the grantor against the claims of *subsequent creditors.*"

IV. The appellant, we submit, must be regarded as being a creditor of Abel Gilman, as to his whole debt at the time of his attempted conveyance, and that the true legal deduction of the facts as found is that the same is void as to him.

V. But if these positions are wrong, we further submit that the legal deduction from the facts, as found, also shows that the conveyance in question was a mere deed of gift, and made in trust for the benefit of the grantor.

1. The actual value of the property was $300; it was a house and lot occupied at the time by the grantor and his family; the consideration was *one dollar* only, the grantor was free from debt, and he or his family continued to occupy it until the spring of the year 1867, *long after this action was instituted.* 2. How can this conclusion be escaped? 3. In such case the instrument is void as against the subsequent as well as the existing creditors. (3 *R. S. 5th ed. p.* 221.)

VI. The errors should be corrected, and the conveyance declared void as to the appellant, and the premises sought to be conveyed be adjudged appliable to the payment of the appellant's judgment, interest and the costs of this action and of this appeal.

*Geo. F. Danforth,* for the respondents. I. To entitle the appellant to a reversal of the judgment, he must show some specific error of the referee. Nothing can be inferred.

II. No such error exists. 1. The conveyance from Gilman to Thurston was valid as between themselves and those claiming under them, although it was without consideration, and made with intent to defraud. (*Jackson* v. *Garnsey,* 16 *John.* 189. *Moseley* v. *Moseley,* 15 *N. Y. Rep.* 334.) 2. The plaintiff has no such standing as will enable him to impeach it. He is not a purchaser. He was not a creditor at the time of the conveyance. 3. But if he was a creditor, the conveyance was good as to him. He knew of, and assented to it. (*See Hone* v. *Henriquez,* 13 *Wend.* 240, *remarks of Savage, Ch. J.*) 4. He did not become a creditor trusting to the ownership by Gilman of the property. (*Carpenter* v. *Roe,* 10 *N. Y. Rep.* 232. *Savage* v. *Murphy,* 34 *id.* 510.) In the case last cited, J. C. SMITH, J. says: "The fraud consisted in the design to obtain a credit thereafter by means of his continued possession, and apparent ownership of the property which

he thus placed beyond the reach of those who should give him such future credit." It is very plain that the judgment on which the plaintiff can alone found this action, was not "recovered for a debt contracted on the credit of the defendant being the owner of the property in question," for the referee expressly finds, "that on the 9th of August, 1862, Gilman informed the plaintiff of the said conveyance—the amount of the consideration—and that such conveyance was made to put the property beyond the reach of the plaintiffs in the slander suit." 5. It was then the right of the plaintiff here, if he did not assent to or like the condition into which his client's property was getting, to say, pay me, or give me security. (*Carter* v. *Besnel*, 2 *John.* 296.) His not doing so, shows that he was satisfied with his client's personal responsibility, or, perhaps, that of the plaintiffs in the slander suits. 6. But if the plaintiff is to be regarded as a creditor, on account of the retainer, and the preparation of the answer, and so, to some extent, innocent of notice, it will not aid him here. He has furnished no data by which his debt can be separated. By blending prior and subsequent demands in one judgment, he can come in only as a subsequent creditor. (*Reed* v. *Woodman*, 4 *Greenl.* 400. *Usher* v. *Hazeltine*, 5 *id.* 471.) 7. The plaintiff gave the strongest evidence of assent to and acquiescence in the conveyance. The conveyance was in fact made on the 4th, delivered on the 7th, recorded on the 8th, and on the 9th day of August was brought to the actual knowledge of the plaintiff, by information from the defendant Gilman, the fraudulent grantor. And at the very time of this information the first act was done by the defendant, viz. the preparation of the answer, in the proceedings which culminated in October, 1863, and for which he recovered a judgment in June, 1864. And he afterwards, with this knowledge, performed the residue of the services. 8. The referee has expressly found that the conveyance was not made with intent to

hinder, delay or defraud the plaintiff. That finding is conclusive. But if it was not, there is no evidence here which will enable the court to criticise it. 9. No trust is created, nor use reserved by the conveyance. The defendant Gilman had no creditor save the plaintiff. He did not intend to defraud him. And the substance of the transaction is, that Gilman wanted and intended to defeat Johnson in his suit, and to do that was willing to and did give away, or make a voluntary conveyance of his property. This he had a right to do, except as against creditors, and, against them, with their assent. The claim of Johnson was disposed of, and the plaintiff in this case can gain nothing under it. As to him the conveyance would in no event be of itself fraudulent or void, and that no intent to defraud existed in fact, the referee has found.

*By the Court,* JOHNSON, J. This case comes before us upon the report of the referee, merely, without the evidence taken before him. The plaintiff's judgment was for services rendered by him, as attorney of the defendant Gilman, in defending two slander suits brought against the latter. The retainer was on the 4th of August, 1862, and the services ended at the circuit in October, 1863, when the plaintiff's complaint in each action was dismissed, and judgment ordered for the defendants therein for costs. The property which the plaintiff seeks to reach and have subjected to his judgment, was conveyed by the defendant Gilman to the defendant Thurston, on the 7th of August, 1862, three days after the plaintiff's retainer to defend the said actions. The consideration of the conveyance, as the referee finds, was one dollar, and the object and intention of it was to defeat the claims of the plaintiffs in the slander suits, should they be able to establish any claims. Gilman had at the time no other creditors, and his sole design was to get his property out of the way of any judgments which might possibly be

Baker *v.* Gilman.

recovered in those actions, and not to hinder, delay or defraud any other person whatever. It turned out that the several plaintiffs in those actions had no "lawful" claim against Gilman. They were not creditors, and, as to them, the conveyance was valid, as it was, also, between the grantor and grantee. It was not designed to defraud the plaintiff of his claim, as the referee expressly finds. As this conveyance was not made with intent to hinder, delay or defraud any existing creditor, or any person having a lawful claim, but only a person making an unlawful and unfounded claim, which the defendant Gilman disputed and denied, and ultimately defeated, it may present a grave question, whether it falls at all within the condemnation of the statute. The statute makes every conveyance void which is "made with intent to hinder, delay or defraud creditors, or other persons, of their lawful suits, damages, forfeitures, debts or demands." The sole object of the statute here, in declaring conveyances void, is to protect, and prevent the defeat of, *lawful* debts, claims or demands, and not those which are unlawful, or trumped up, and which have no foundation in law or justice, and the verity of which is never established by any judgment, or by the assent of the person against whom they are made. As against claims and demands of the latter class, the statute does not forbid conveyances or assignments, nor declare them void. This was clearly the character of the claims made against Gilman. If they had ripened into a judgment, that would have been conclusive evidence that they were just and lawful. But, as they were denied, and defeated, the adjudication is equally conclusive against them, for all the purposes of this action. There was, therefore, at the time the conveyance was made, no person competent to question its validity, and the title must have vested in the grantee absolutely, as against all the world. Subsequent creditors of the grantor could not reach it in such a case, as the foundation upon

which their rights are held to attach to property once owned by their debtor, does not exist. It is only where a conveyance is void, or voidable, as to creditors, when made, that subsequent creditors of the grantor can attack it on that ground alone. It is not, in such a case, a *bona fide* conveyance to the grantee, either as to prior or subsequent creditors. (*King* v. *Wilcox*, 11 *Paige*, 589.) Voluntary conveyances, in view of impending or apprehended insolvency, or where the grantor retains possession, as before, and obtains credit on the strength of his apparent ownership, stand upon a somewhat different footing, and do not affect the question here presented. (*See Carpenter* v. *Roe*, 10 *N. Y. Rep.* 227; *Savage* v. *Murphy*, 34 *id.* 508.) Here is no question of apprehended insolvency by the grantor, and it is clear that the credit was not given by the plaintiff upon the faith of Gilman's ownership of the house and lot in question. It is expressly found, by the referee, that on the 9th of August, 1862, two days after the conveyance, and five days only after the retainer, Gilman informed the plaintiff of the conveyance, and of the object and purpose for which it had been made. The plaintiff had then only prepared the answers in the slander suits, which were verified and served on that day. Only a small portion of the plaintiff's demand had then been earned, and he went on without objection, and continued defending the actions, for a year and over, afterwards, and until they were determined in the defendants' favor. The plaintiff's judgment was obtained June 11, 1864. The plaintiff was clearly a subsequent creditor of Gilman. His employment, by virtue of his retainer, was a continuous one until the determination of the actions. It was a single demand for services, a small portion of which were rendered before the conveyance, and the far larger portion long afterwards. This being embraced in one judgment, nearly two years after the conveyance, renders the plaintiff clearly a subsequent

Baker *v.* Gilman.

creditor. This point, in just such a case as this, was expressly decided by the Supreme Court of Maine, in *Reed* v. *Woodman,* (4 *Greenl.* 400.)

But there is another ground on which I think the plaintiff is clearly precluded from claiming to reach this property, and subject it to his judgment. The defendant Gilman was his client, and he was informed of what had been done, and of the intent of the transaction, very soon after the relation was formed. He made no objection, and asked for no security, but continued the service, as he had begun it, with full knowledge of the whole transaction, and of its character. Under such circumstances, I think, he must be held to have assented to it, and to have consented to go on, and trust the defendant, upon the basis of that property being out of his hands, and under the ownership and control of another. I do not think a creditor, who has trusted his debtor after being fully informed by the latter that he has put his property out of his hands, by a conveyance, valid as between him and his grantee, though voidable as to existing creditors, should ever be allowed to come into court, and claim that such conveyance was fraudulent and void, as to him, on account of such indebtedness. As to such creditor, a conveyance of that kind would not be fraudulent, in any sense, and could not, on that ground, be avoided. I am not aware that this precise point has ever arisen and been adjudged, but, upon general principles, it seems to me exceedingly clear.

The judgment must, therefore, be affirmed.

[MONROE GENERAL TERM, September 7, 1868. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]