# CHARLESTON.

WILLISON AUDIT AND SYSTEM CO. v. RALPH F. HOLDEN, *et al.*

## (No. 5371.)

Submitted March 24, 1926.　Decided April 6, 1926.

CREDITOR—*Where Creditor, With Full Knowledge of Purpose of Gift Made by His Debtor to Third Party, Assents to and Executes Such Gift, He Cannot Charge Property of Donee, in Which Gift Has Been Invested, With Debt of Donor, on Ground Gift Was Voluntary, or Made With Fraudulent Intent.*

Where a creditor, with full knowledge of the purpose of a gift made by his debtor to a third party, assents to and executes such gift, he cannot subsequently charge the property of the donee, in which the gift has been invested, with the debt of the donor, on the ground that the gift was voluntary, or made with fraudulent intent.

LITZ, WOODS, JUDGES, absent.

(Fraudulent Conveyances, 27 C. J. § 130.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Harrison County.

Action by Willison Audit and System Company against Ralph F. Holden and wife, Bessie C. Holden. Decree for plaintiff and defendant appeals.

*Decree reversed; bill dismissed.*

*Robert R. Wilson,* for appellee.
*Carter & Sheets,* and *Carl B. Kyle,* for appellants.

HATCHER, JUDGE:

This is a suit in chancery brought by the Willison Audit and System Company against Ralph F. Holden and his wife, Bessie C. Holden, for the purpose of having real property owned by the wife sold to satisfy the demands of the plaintiff against the husband. The circuit court of Harrison County entered a decree in favor of plaintiff for $645.47, from which the defendants have appealed.

The relationship of employer and employe, which had existed for several years between plaintiff and Holden, was terminated Dec. 15, 1919. At that time the books of the plaintiff showed that Holden was indebted to the company in the sum of $418.31. Later the plaintiff charged Holden's account with two more items, one of $30.00, the membership fee of Holden to an accounting society, which amount was paid by plaintiff, and the other of $163.88, which represented the amount of a note of Holden bought by plaintiff (after Dec. 15, 1919) from the payee, the Bank of Matoaka.

Mrs. Holden purchased real property in her own name in 1911, where the defendants and their children now live. From time to time since the purchase she has borrowed money, which she has expended in paying off the balance due on the purchase price of the said property, and in making improvements thereon. During 1918 and 1919 the plaintiff made a number of payments to her out of her husband's salary. These payments were in amounts of $50.00 and $100.00, and aggregate about $1200.00. They were made upon the request of Mrs. Holden, with the assent of Holden. The testimony of plaintiff's president in this regard is: "It was always my understanding, both from Mr. and Mrs. Holden, that the moneys which we paid direct to Mrs. Holden, were made to enable her to meet maturing obligations against their home —or the house which Mrs. Holden later built for renting purposes." An account was kept between plaintiff and Holden, commencing Oct. 1, 1917, and closing in Dec. 1919, which shows Holden's salary more or less overdrawn continuously.

Mrs. Holden admitted that some of the money received by her from plaintiff was paid on debts against her property. She could not separate such payments from those for household expenses. Both she and her husband expressly denied any intention to defraud, hinder and delay plaintiff. Holden testified that the plaintiff had agreed to bear the expenses of his membership in the accounting society; that the plaintiff had paid him a bonus of approximately $400.00 in 1918 and that it was his understanding with plaintiff that he was to receive a bonus in 1919 not less in amount than the one of

1918. The plaintiff did not controvert Holden's statement as to its responsibility for the membership fee, but its president stated that the bonus for 1919 was to depend entirely on his own volition.

It is plaintiff's contention that (1) the payments which it made to the wife out of her husband's salary were gifts from the husband to the wife with the intention to defraud, hinder and delay the creditors of the husband, and are void under Ch. 74, Sec. 1, Code, and (2) if the gifts were not made with such intent, they were nevertheless voluntary, or upon a consideration not deemed valuable at law, and as plaintiff was a creditor to whom the husband was indebted at the time of the gifts, under Ch. 74, Sec. 2, Code, such gifts are void.

There is no evidence supporting the first contention of plaintiff. The defendants deny any intention to defraud. The close association of the parties, the complete candor of the defendants to plaintiff as to the purpose of the payments to the wife, the expectation of the husband to receive a bonus for 1919 which would have about cancelled his indebtedness to plaintiff (as it stood prior to the entry of the last two items thereon), all repel any inference of fraud. Consequently Ch. 74, Sec. 1, Code, does not apply.

In support of plaintiff's second contention, counsel rely on the severe construction consistently given Sec. 2 of Ch. 74, Code, in *Lockhard* v. *Beckley,* 10 W. Va. 87, *Greer* v. *O'Brien,* 36 W. Va. 277, and other West Virginia decisions. In each of those cases, however, the transfer or conveyance held void was one made by the debtor, perhaps without the knowledge, and certainly without the assent of the creditor. Those decisions have no bearing on a case such as this, where the creditor not only assented to, but actually executed the gifts for the donor. 27 C. J., pages 481-2, pars. 130-1, states the rule to be that a conveyance, even where in fraud of creditors, is valid as far as those creditors are concerned who assent to the conveyance, and that when a creditor participates in such a conveyance, he will be estopped by his conduct from attacking the transfer. The text is amply supported by annotation, although citation of authority hardly seems necessary. *Volenti non fit injuria* was an established legal tenet in the days of Jus-

tinian. English chancellors adopted the principle thereby expressed, as well as the Latin phraseology. Modern text writers and courts venerate it as a maxim of equity jurisprudence. ''No injury is done to one consenting,'' or, more liberally translated, ''No one can maintain an action for a wrong where he has consented to the act which occasions his loss.'' Herman, Est. par. 735. For more than fifteen hundred years the flawless logic of this axiom has been unchallenged. ''It requires no citation of authority to show that a creditor who assents to an assignment by his debtor—is barred by his consent from raising objection afterwards to the assignment for any cause known to him when he consented.'' Bigelow on Fraudulent Conveyances, Ch. XVI, par. 3. Here the plaintiff would raise objection to the assignments of Holden to his wife, for a cause of which it had full knowledge at the time the assignments were executed. See *Scholey* v. *Worcester,* 4 Hun. 302; *Baker* v. *Gilman,* 52 Barb. 26; *Zuver* v. *Clark,* 104 Pa. 222; *Perisho* v. *Perisho,* 95 Ill. App. 644; *Bunce* v. *Bailey,* 39 Mich. 192. Therefore the plaintiff's cause finds no support in Ch. 74, Sec. 2, Code.

The argument is made that the answer does not plead estoppel and that failure to so plead operates as a waiver of the estoppel. It is the general rule that an estoppel not specially pleaded is not available, even though established by the evidence. But there are several recognized exceptions to this rule. One is that evidence of estoppel is admissible without being pleaded, where the party himself voluntarily produces the evidence which warrants an estoppel upon him. *Gillette* v. *Young,* 45 Col. 562; *Grafeman Dairy Co.* v. *Bank,* 290 Mo. 311, 235 S. W. 435; 21 C. J. 1246. In this case our application of the rule of *volenti non fit injuria* is based on the testimony of the plaintiff's president and upon the letters of the defendant which the plaintiff filed. Consequently it comes within the above exception.

The evidence shows payments made on the wife's property during 1920, 1921, and 1922. Counsel assert that some of these payments were made with the husband's money, and that no estoppel applies to plaintiff as to such payments. When we look to the record, however, we find that plaintiff's

original bill was filed at March Rules, 1920, and that no payments were made until after this suit was brought. Advances to the wife made by the husband after the commencement of this litigation cannot be considered in this suit.

Perceiving no equity in plaintiff's demands, the decree of the circuit court will be reversed and the plaintiff's bill dismissed.

*Decree reversed; bill dismissed.*