In the Matter of the Estate of FRANK E. CAMPBELL, Deceased.*
Surrogate's Court, New York County, August 16, 1937.

* See, also, 165 Misc. 809.

*McCanliss & Early*, for the administrators.

*Gettinger & Gettinger*, for Louis Gurock and Eloess Holding Corporation.

*William Roth*, for the receiver of Enjay Holding Co., Inc.

*George Robinson, pro se.*

*Jacob F. Raskin, pro se.*

*Edward Copeland, pro se.*

DELEHANTY, S. By decision in this accounting proceeding published April 14, 1937 (N. Y. L. J. April 14, 1937, p. 1858), the court held that a judgment against the administrators had been settled by them for the sum of $25,000, and the court directed that all persons claiming an interest in the $25,000 fund attend upon a future hearing at which their respective claims would be considered. Prior to the hearing date a party not theretofore represented (Eloess Holding Corporation) came in on its own motion and asserted not only that it was a necessary party to the controversy disposed of by the published decision but also was entitled to the full proceeds of the judgment without diminution by the purported settlement of which it claimed to have had no notice. A receiver in supplementary proceedings and a trustee in bankruptcy as well as this new party attended upon the date fixed for the hearing of claims to the fund. It was agreed that the court should try the issue first

whether Enjay Holding Co., Inc., had any interest in the fund. If it had, then the court would be required to determine the relative rights of persons whose interests were derived from Enjay Holding Co., Inc. The parties agreed that controversy among the latter should be subordinated for the time being since there was no point to those controversies unless there was a subject-matter upon which they would operate. The controversy which the parties then agreed was first to be tried was the controversy between Enjay Holding Co., Inc. (disregarding the appointment of a receiver or trustee for the moment) and Eloess Holding Corporation.

In the fall of 1931 Nathaniel J. Hess was the owner of all of the shares of Enjay Holding Co., Inc. He then conferred with an accountant and an attorney concerning the working out of a plan which he had for dealing with the assets of Enjay Holding Co., Inc. The plan then considered actually was carried into effect in February, 1932. Considerable time was spent in the hearing on the question whether or not the financial status of Enjay Holding Co., Inc., had materially changed in that interval and whether or not the transactions in February, 1932, were merely the visible fruits of a bargain entirely completed, except for delivery of the instruments, in the fall of 1931. The court regards the difference in point of time as unimportant for reasons which will appear hereafter.

At the time of the transactions Enjay Holding Co., Inc., had a few thousand dollars in cash, some $50,000 worth of marketable securities, a group of assets which later were transferred to Eloess Holding Corporation and a further group of assets which it still has except as they have been lost by foreclosures of properties. Enjay Holding Co., Inc., was indebted on an issue of bonds in excess of $75,000 and was indebted on notes to two banks for more than $200,000. It had in addition miscellaneous small obligations. Mr. Hess at the time was married to Elaine O. Hess. He was indebted to Enjay Holding Co., Inc., as the latter's books showed, for a very substantial sum of money. He held the bonds.

The plan which was outlined in October, 1931, and effected in February, 1932, contemplated the following steps: Hess made a gift to his wife of the bonds of Enjay Holding Co., Inc. She thereupon delivered the bonds to the corporation for cancellation in consideration of delivery by the corporation to her of the cash and liquid securities which it then possessed. The amount paid was less than the amount due on the bonds. A newly-organized corporation (Eloess Holding Corporation) adopted resolutions for acquiring certain assets of Enjay Holding Co., Inc., and authorized its officers to deliver over to Enjay Holding Co., Inc., all of the

shares of Eloess Holding Corporation in exchange for such assets. Among the assets so to be exchanged for the stock of Eloess Holding Corporation was a contract upon which deceased was obligated. Enjay Holding Co., Inc., adopted a resolution that the shares of Eloess Holding Corporation receivable by Enjay Holding Co., Inc., in exchange for some of the latter's assets should be distributed by way of dividend to the stockholder of Enjay Holding Co., Inc. Hess was the sole stockholder and pursuant to this resolution got all the shares of Eloess Holding Corporation. These shares did not reach the treasury of Enjay Holding Co., Inc., but pursuant to the resolution referred to were distributed directly to Hess out of the treasury of Eloess Holding Corporation. Enjay Holding Co., Inc., continued to retain the assets theretofore in its possession other than the cash, the marketable securities and the property transferred to Eloess Holding Corporation. Hess thereupon deposited with trustees for the benefit of his wife the shares of Eloess Holding Corporation and some other securities not here of consequence. The trustees were an attorney regularly employed in the office of Hess and a brother-in-law of Hess. They took possession of the trust capital including the shares of Eloess Holding Corporation and held such capital from February until May, 1932. In April, 1932, the banks to which Enjay Holding Co., Inc., was indebted threatened to institute bankruptcy proceedings against Enjay Holding Co., Inc., and against Hess who had personally indorsed the notes unless the transactions just outlined were reversed or the banks were secured. After some delay and many conferences the old trust was rescinded, the same properties which had been in the trust for Mrs. Hess were deposited with new trustees and a new trust was established for the benefit of all then known creditors of Enjay Holding Co., Inc. The result of the new arrangement was that the transfers to Eloess Holding Corporation of the assets of Enjay Holding Co., Inc., were left undisturbed but the shares of Eloess Holding Corporation which represented such transferred assets of Enjay Holding Co., Inc., were held in trust for the latter's creditors. It is on the basis of this state of affairs that Eloess Holding Corporation claims to be the owner of the contract upon which deceased was obligated and upon which the judgment was obtained which is referred to in the prior decision of the court published April 14, 1937.

The attack upon the title of Eloess Holding Corporation is made by an assignee of a claim arising out of legal services rendered to Enjay Holding Co., Inc., commencing in August, 1932. Concededly the attorney who rendered these services had done no business for Enjay Holding Co., Inc., until that month. He had no

basis for assuming anything about its assets. He asserts that the transfer of the assets of Enjay Holding Co., Inc., is wholly void and that though he is a subsequent creditor he may assert the invalidity of the transfer If he can avoid the transfer the effect will be that Eloess Holding Corporation will lose all title to the assets transferred to it, and such assets, with whatever remained in February, 1932, as assets of Enjay Holding Co., Inc., will have to be administered either in the receivership or in the bankruptcy for the benefit of all now existing creditors of Enjay Holding Co., Inc.

Considerable testimony was taken as to the details of the assets of Enjay Holding Co., Inc., in the years 1931 and 1932. The court finds as a fact that the transfer out of Enjay Holding Co., Inc., of the cash, the salable securities and the assets transferred to Eloess Holding Corporation rendered Enjay Holding Co., Inc., unable to pay its debts. The form in which the transfer was made is of little consequence. The substance of what was done was to take out of Enjay Holding Co., Inc., assets which found their way into the possession of Hess. The creation of Eloess Holding Corporation and the transfer to it of the assets in exchange for the shares of Eloess Holding Corporation did not alter the essential nature of what was done. In a situation quite similar the Court of Appeals said: " Stripped of all speculations and assumptions we have here the case of a corporation which is in debt. While so indebted its officers enter into an agreement under which substantially all of its assets are transferred to another corporation which is thereafter to continue the business. In payment of this transfer the purchasing corporation issues some of its capital stock, not to the selling corporation, nor yet to its officers as trustees, but to the principal stockholder as an individual. When the creditor undertakes to assert his rights the stock is re-issued to the late treasurer of the selling corporation, who has become the president of the purchasing corporation, and he distributes the same without regard to the claims of creditors  *  *  *.  In the recent case of *Cole* v. *M. I. Co.* (133 N. Y. 164) this court decided that a transaction similar to the one under review was illegal as against creditors." (*Hurd* v. *New York & C. Steam Laundry Co.*, 167 N. Y. 89, 94.)

It is necessary to consider another contention made by this creditor of Enjay Holding Co., Inc. He asserts that the Campbell contract, originally an asset of Enjay Holding Co., Inc., could not be transferred to Eloess Holding Corporation because the contract by its terms was non-assignable. The provision of non-assignability is for the benefit of the obligor. It is always to the advantage of the obligee to have the non-assignability provision removed. The objecting creditor of Enjay Holding Co.. Inc., has no privity with

the obligor. He has no right to advance the non-assignability of the obligation. The objecting creditor also points out that the judgment recovered on the obligation was nominally in the name of Enjay Holding Co., Inc., and denies the latter's power to reassign either the contract or the judgment thereon. But the assignment to the latter from Eloess Holding Corporation for the purpose of the suit conveyed to Enjay Holding Co., Inc., no beneficial interest in the proceeds of the litigation. Enjay Holding Co., Inc., was obligated to assign back to Eloess Holding Corporation the judgment which was recovered on the contract of deceased. The court holds that the transactions in the nature of assignments which were made originally first to transfer the contract from Enjay Holding Co., Inc., and later to facilitate the litigation and finally to return the judgment secured to Eloess Holding Corporation did not effect a failure of title of Eloess Holding Corporation to the contract or to the proceeds thereof.

The objecting creditor of Enjay Holding Co., Inc., also asserts that the transaction of February, 1932, contravenes the terms of section 15 of the Stock Corporation Law since in its nature it was a payment of assets by an insolvent corporation to a stockholder. The Stock Corporation Law pronounces such a transaction void and the objecting creditor asserts that since it was void no title could pass to Eloess Holding Corporation. This section of the Stock Corporation Law is intended for the protection of creditors existing at the time of the transfer condemned by it. It may be invoked only by creditors whose claims had then accrued (*Ginsberg* v. *Automobile Coaching Co.*, 151 App. Div. 627, 629; *Caesar* v. *Bernard*, 156 id. 724; and a case directly on the point, *Trustees of Masonic Hall* v. *Fontana*, 99 Misc. 497, 503). The cited cases construed section 66 of the Stock Corporation Law which is the equivalent of the existing section 15 of that law. There seems to be no reason why such a transaction as is prohibited by the Stock Corporation Law should not be validated if the parties affected by it agree to validate it. The court is unwilling to follow the case cited by the objecting creditor (*Matter of German-American Improvement Co.*, 3 F. [2d] 572, 576) if it is to be construed as holding that such ratification cannot be made.

Reliance is also placed by the objecting creditor on the terms of article 10 of Debtor and Creditor Law, sections 274, 275 and 276. He claims protection of sections 274 and 275 of the Debtor and Creditor Law because Enjay Holding Co., Inc., in February, 1932, was a person engaged in business and was also a person intending to incur debts. The court holds as a fact that the transactions of Enjay Holding Co., Inc., after February, 1932, were negligible from a business viewpoint, that they did not constitute the engaging in

business nor the incurring of debts as those terms are used in the Debtor and Creditor Law. The corporation was moribund. It did what it could to protect its interests but it had no capital with which to engage in business and actually engaged in none. Its hiring of an attorney on a contingent basis months after it had suspended active operations cannot be held to be the doing of business nor can such a hiring be related back to the suspension of business by the corporation and regarded as being within the terms of section 275 of the Debtor and Creditor Law. There was no plan on the part of this corporation to incur any future obligation. The proffered testimony of Eloess Holding Corporation that the judgment of the objecting creditor was obtained by collusion and fraud is not relevant to the issue here presented.

Since neither section 274 nor 275 of the Debtor and Creditor Law applies to the facts existing in the affairs of Enjay Holding Co., Inc., there remains nothing in that law upon which the objecting creditor can rely unless it be section 276. This section says that any conveyance made with *actual* intent to injure or defraud *either* present or future creditors " is fraudulent as to both present *and* future creditors." Examination of the authorities relevant to the ascertainment of the meaning of this section leads the court to the conclusion that it does not aid the objecting creditor.

If a subsequent creditor has knowledge of the fraudulent conveyance before he extends any credit to the debtor he cannot thereafter question the transfer. (*Baker* v. *Gilman*, 52 Barb. 26, 39.) A subsequent creditor may not attack as fraudulent a prior conveyance on the ground of *actual* intent to defraud unless the actual intent existed *either specifically or generally with reference to the subsequent creditor.* (*Weinstock* v. *Hallenbeck*, 163 App. Div. 858, mem. decision citing *Todd* v. *Nelson*, 109 N. Y. 316, 327.) This case was cited to the same purpose in *Neuberger* v. *Keim* (134 N. Y. 35, 38) where the court said:

" The rule we regard as well stated by Mr. Justice BREWER, in the case of *Schreyer* v. *Scott* (134 U. S. 411):

" ' It is evident that the rule obtaining in New York, as well as recognized by this court, is that even a voluntary conveyance from husband to wife is good as against subsequent creditors, unless it was made with the intent to defraud such subsequent creditors; or there was secrecy in the transaction by which knowledge of it was withheld from such creditors who dealt with the grantor upon the faith of his owning the property transferred; or the transfer was made with the view of entering into some new and hazardous business, the risk of which the grantor intended should be cast upon the parties having dealings with him in a new business.' (See, also, *Todd* v. *Nelson*, 109 N. Y. 316, 327.) "

Textwriters agree with the courts that the *actual* intent which makes operative the terms of section 276 of the Debtor and Creditor Law for the benefit of future creditors is an intent *directed either specifically or generally to them.* Thus, Glenn in his " Law of Fraudulent Conveyances " says (§ 319): " In other words, the statute protects the subsequent creditor, but it is possible to go too far with the letter of it. The duty of the courts, then, is to find some nexus between the act of the debtor and the liability which subsequently accrued, something to justify the statement that in the particular case the debtor's conveyance was accompanied on his part by an intention to injure the subsequent creditor." In section 323 of the same text Glenn says that the *subsequent* creditors take no advantage merely from an intention of the debtor to defraud his *existing* creditors. Again, in his section 336 Glenn says: " It should never be true that subsequent creditors may impeach a transaction where, after the conveyance was made, the grantor paid off all his debts then existing; the insolvency being a later matter and the debts now presented being of later origin. In that case the facts answer the imputation of wrongful intent."

Since the authorities hold that the *actual* intent to defraud which alone makes operative the benefits of section 276 of the Debtor and Creditor Law can be invoked only if the intent relates to the particular creditor or generally to all future creditors, it is proper to emphasize that on the facts here there is no basis for the application of section 276. The creditors of Enjay Holding Co., Inc., were satisfied with the adjustment reached in May, 1932. The company was wholly inactive then as indeed it was in February, 1932. Neither it nor its officers had any intention to engage in business on either occasion. No business in fact was transacted thereafter. No *actual* intent existed to defraud any one whose entry into the corporation's affairs might arise after either February, 1932, or May, 1932.

Accordingly the court holds that the transfer to Eloess Holding Corporation is not subject to attack by a creditor of Enjay Holding Co., Inc., whose claims arose subsequent to the agreement in May, 1932, for the benefit of all the ten creditors of Enjay Holding Co., Inc. This determination will eliminate from the proceedings here the receiver in supplementary proceedings and the trustee in bankruptcy of Enjay Holding Co., Inc. It leaves open now for determination the question whether the settlement reached with Enjay Holding Co., Inc., while it ostensibly was the judgment creditor of the estate, is binding upon Eloess Holding Corporation. The court will hear the parties on that issue on the 21st day of October, 1937, at two o'clock P. M.