In the Matter of the Estate of FRANK E. CAMPBELL, Deceased.
(ENJAY-ELOESS CLAIM.)

Surrogate's Court, New York County, January 12, 1938.

See headnote in *Matter of Campbell* (164 Misc. 632).

*McCanliss & Early,* for the administrators.

*Gettinger & Gettinger,* for Louis Gurock and Eloess Holding Corporation.

*William Roth,* for the receiver of Enjay Holding Co., Inc.

*George Robinson, pro se.*

*Jacob Raskin, pro se.*

*Edward Copeland, pro se.*

DELEHANTY, S. By decision published in the New York Law Journal of April 14, 1937 (p. 1858), the court held that a valid settlement agreement had been made between the administrators of the estate of deceased and a judgment creditor. The proceedings up to that point had been conducted before this court under the name of Enjay Holding Co., Inc., as judgment creditor. Following the publication of the decision persons representing Eloess Holding Corporation (hereinafter called Eloess) and the creditors thereof moved through attorneys to reopen the proceedings. They asserted that the adjustment reached had been made without their knowledge or consent, though they were the real parties in interest and were known so to be by the administrators. By reason of this application of Eloess a further hearing was necessary in and as part of the original proceeding. In the course of that hearing proof was taken not only in respect of the claimed lack of knowledge of the adjustment on the part of Eloess but also in respect of the adjustment itself. At the conclusion of the hearing it had been demonstrated beyond question that Eloess had been fully advised currently as to the negotiations for the settlement, and that the very attorney who appeared in the present proceedings on behalf of Eloess was himself a participant in conferences in which not only was the amount of the settlement discussed but the terms of it agreed upon and authority to make it conferred on the attorney then acting in the matter. So far as the application to intervene is concerned, it was clearly developed to be based on suppression of the facts respecting this participation by Eloess in the settlement negotiations. The moving papers are drawn so as not to contain assertions contrary to fact but so as to create an inference (contrary to fact) that Eloess was not aware of the prior proceedings. The fact statements are that Eloess " did not receive notice of the hearings," " were not present and did not participate in the hearings," and the like. Its present counsel did not deny the testimony, which shows his participation in the settlement and his knowledge of the pendency of the hearing in which Enjay Holding Co., Inc., was the party of record. This attorney is shown to have waited in hope of a favorable decision. When his hope in that respect was disappointed (and only then) did he come in on a set of papers saying his client had no notice of the hearing.

The hearing developed nothing about the settlement itself other than what had been already put in the record except that there was more fully placed in the record the circumstances surrounding the settlement. This additional proof and the original record show that at the time the settlement was reached between the estate representatives and the attorney for the creditor (who was, as the

court now finds, authorized to speak not only for Enjay Holding Co., Inc., the nominal judgment creditor, but also for the real parties in interest) there was in existence a third-party order containing a stay which operated to forbid payment by the estate representatives. There existed at that time also a real hazard that through the activities of a lawyer representing claimants against the nominal judgment creditor other controversies would arise to plague the judgment creditor and those who claimed to be the real parties in interest. The event has demonstrated that the fears then entertained were justified, because a series of moves have been made all designed to diminish, if not to prevent, the participation by Eloess in the collection of the moneys here in controversy. Such controversies have, in fact, aided in the tie-up of these funds over the long period which has elapsed since the settlement was made, and have brought into this court and into other courts various parties who claim rights in the fund for divers reasons. This court separately tried and decided one such controversy. The decision thereon (164 Misc. 632) shows the extent of the controversies which the settlement would have avoided in large part, if not wholly, had the judgment creditor been able to procure in the Supreme Court the modified order which the executors were willing to accept in lieu of the complete dismissal of the third-party order to which they were entitled under the settlement.

At the time of the settlement not only did the bargain resulting in the settlement contemplate the eventual interchange of releases and the incidental disposition of the appeal then pending, but the arrangement also contemplated that the estate representatives would be bound in any event to pay the $25,000 when certain specified things were done in the then state of the record of proceedings hostile to the Enjay Holding Co., Inc., the judgment creditor. The estate representatives assumed the risk that was inherent in the ingenuity of counsel for creditors of Enjay Holding Co., Inc. In fact, the estate has had to pay the cost involved in being dragged unwillingly into controversies in which it has had substantially the position of stakeholder. The estate made a bargain to pay in all events when certain fixed conditions were met. The fact that such conditions have not been met is not attributable to the estate representatives. They have not been arbitrary in their demands. When suggestion was made to them that they deposit enough to cover the claim of the creditor of Enjay Holding Co., Inc., which alone was then pending, they agreed to make that deposit and to turn over the balance to the judgment creditor, asking only to be relieved from so much of the restraining order as might involve them in a future contempt proceeding. It was not due to any act of the administrators that the court which issued

the restraining order refused to modify it in the particulars stated. The administrators are not to be criticized for refusing to accept a bond in lieu of the lifting of that restraining order. They were entitled to be protected against a contempt charge.

It has already been held by the court that a binding bargain was made when the settlement was entered into. The court adheres to the ruling that that new contract superseded and extinguished the prior rights of the parties. The disposition of the appeal was not the sole consideration involved. The immediate payment and the avoidance thereby of prospective further litigation deferring payment were in the minds of the parties. The bargain was not a continuing offer which fell when, by reason of the acts of the judgment creditor and not of the estate representatives, the appeal, which was noticed for argument by the judgment creditor, was forced on for a hearing. That maneuver of the judgment creditor is in no different status than if it had moved to dismiss the appeal on the ground that the bargain of settlement had superseded it. Both parties were bound by the agreement of settlement no matter what happened on the appeal. There was no rescission of the agreement — no mutual cancellation of it. The estate representatives have been at all times ready to make payment in accordance with the agreement. They should not be burdened nor should the estate be burdened with greater liability than is involved in the settlement terms. The amount due and payable to Eloess is limited to the settlement figure. That amount is now available on demand as it always has been available to Eloess. This sum may be paid into the hands of the clerk of this court for the account of Eloess, and thereupon the estate liability under the judgment and the settlement will be terminated. Thereupon neither Eloess nor Enjay Holding Co., Inc., its trustee in bankruptcy or its receiver in supplementary proceedings will be necessary or proper parties in the further affairs of this estate. By the decision heretofore mentioned (164 Misc. 632) the identity of the person beneficially interested in the fund in controversy was established. By the decision of April 14, 1937, now conformed by this supplementary decision, the amount of the estate liability is fixed at $25,000.

These various controversies having arisen in the accounting proceeding and the form of them having been agreed upon by counsel for all the parties interested, an interim decree may be submitted on notice in the accounting proceeding disposing of the issues of amount of the fund and title thereto. Notice of settlement of such decree is to be served on all the parties who have appeared in this present proceeding and all of the parties who appeared in the controversy which terminated by the decision reported in 164 Misc. 632. Proceed accordingly.