## In re BELT–MODES, Inc.

United States District Court
S. D. New York.
Jan. 25, 1950.

Boudin, Cohn & Glickstein, New York City, Jean. Taylor, New York City, of Counsel, for Wage Claimants.

Allen Murray Myers, New York City, Attorney for the Trustee.

IRVING R. KAUFMAN, District Judge.

The Court has before it a petition by the Trustee of the Bankrupt, Belt-Modes, Inc., to review the order of the Referee in Bankruptcy allowing the wage claims of the employees of Danin, Inc.

The facts, as they appear to this Court, are as follows:

Prior to 1946, Belt-Modes, Inc., manufactured ladies' belts. In the early part of 1946 it began to or desired to manufacture children's and ladies' handbags. To make belts it had to sign a contract with the Beltmakers' Union, and to make pocketbooks a contract had to be signed with the Pocketbook Workers' Union.

Rather than combine both operations, on January 22, 1946, Daniel Rubin, the principal stockholder of Belt-Modes, Inc., organized a new corporation, Danin, Inc., for the purpose of manufacturing pocketbooks, and Belt-Modes, Inc. continued to make belts.

Danin, Inc. was a separate entity. It rented its own premises, hired its own help, owned the fixtures, machinery and equipment, had its own complete set of books and records, stationery, bank account, issued its own checks, paid its own taxes, issued financial statements, purchased insurance for itself, and participated in other normal business procedures.

The transactions between the two corporations, (Danin, Inc. and the Bankrupt) followed the usual pattern found in a jobber-contractor relationship. At the end of every month Danin, Inc., rendered a bill to Belt-Modes, Inc. This bill was entered

on the Danin, Inc., books as a debit to accounts receivable and a credit to sales and was entered on the Belt-Modes, Inc. books by a debit to "purchases-contractors, labor and materials" and a credit to contractors payable.

Danin, Inc., was only one of several contractors with whom Belt-Modes had business negotiations. The same entries were made for all contracts on Belt-Modes, Inc., books.

All of the payrolls of Danin, Inc., were paid out of Danin's bank account.

On or about the middle of 1947, Danin, Inc., moved into the same premises occupied by Belt-Modes, Inc., but continued to operate separately as it had previously done until Belt-Modes was adjudicated a Bankrupt. Danin, Inc., apparently is still in existence and is not involved in this bankruptcy proceeding.

In spite of the fact that the claimants herein were the employees of Danin, Inc., they filed wage claims against the estate of the Bankrupt. The Trustee objected to such claims on the grounds that the Bankrupt was in no way obligated to said claimants, in that the claimants were never employed by the Bankrupt and never rendered any work, labor or services for the Bankrupt.

The Referee overruled these objections and allowed these claims on the ground that the said employees were actually the employees of the Bankrupt. The Referee made findings on March 25, 1949 as follows: (The numbers are designated as in the final order of the Referee, Oct. 27, 1949.)

"1. The bankrupt was organized in 1946 and began the manufacture of belts and pocketbooks and handbags but within several months was confronted with a jurisdictional dispute between two labor unions, one claiming the affiliation of the belt makers and the other that of the pocketbook and bag workers in the bankrupt's employ.

"2. Daniel Rubin, at all times herein mentioned being the president and sole stockholder of the bankrupt, thereupon caused the incorporation of Danin, Inc., of which he became president and sole stockholder, with the intent and purpose that Danin, Inc. would manufacture and deliver pocketbooks and handbags solely for the bankrupt with moneys and materials furnished by the bankrupt.

"3. The bankrupt's pocketbook and handbag employees were assigned to work in other premises under the name of Danin, Inc., but after a year the activities carried on in its name were moved to the bankrupt's premises.

"4. A bank account and set of books were maintained in the name of Danin, Inc. and reports, statements and tax returns were issued in its name, but all were kept, prepared, controlled or issued by the bankrupt through its executive or clerical employees, Danin, Inc. at no time having in its own right any executive, manager or clerk.

"13. While in form and outward appearance and conduct Danin, Inc. conducted a separate and independent enterprise, in truth and in fact it was merely a department or division of the enterprise conducted by the bankrupt under the control of Rubin and was not intended or conducted as a corporation engaged in business for profit.

"14. The claimants were in truth, in fact and in reality, employees of the bankrupt."

The Trustee petitioned for a review of the Referee's decision, which appeal was argued before Hon. Murray Hulbert, a Judge of this Court on the 18th day of May, 1949. Judge Hulbert found, among other things, in an opinion handed down on June 16, 1949, that:

"From the findings made by the Referee, the Court is of the opinion that the conclusion reached was not justified. Therefore the matter must be remanded for further findings. There are several items of importance in the record, on which no findings were made. These include: (1) Danin carried insurance in its own name, including workmen's compensation, paymaster robbery policy, liability insurance, even while Danin was occupying the same premises as the bankrupt at 1 East 33rd

Street, New York, N. Y.—the policies were billed to and paid by Danin; (2) the financial statements of the bankrupt never showed that it was entitled to the assets of Danin, nor were Danin's liabilities charged to the bankrupt; (3) Danin, while occupying its own premises at 396 Broadway, paid the landlord itself; (4) the Danin employees were carried on the Danin books as creditors of Danin, not of the bankrupt; (5) the employees of Danin, through their union, had an employment contract with Danin under which the conditions of employment of Danin employees were established—e. g. the union demanded and obtained from Danin hospitalization insurance for the workers—; (6) the books and records showed that Danin paid for "office supplies and expenses"; (7) the financial statements of Danin purported to charge the bankrupt for work done on the pocketbooks.

"In passing it is well to note that the traditional case in which a court of equity looks beyond the corporate entity is to prevent the perpetration of a fraud. Cf. Wormser, Piercing the Veil of Corporate Entity, 12 Col.L.R. 496; Jenkins v. Moyse, 254 N.Y. 319 [172 N.E. 521, 74 A.L.R. 205].

" 'The doctrine of corporate entity is not so sacred that a court of equity, looking through forms to the substance of things, may not in a proper case ignore it to preserve the rights of innocent parties or to circumvent fraud.' In re Rieger, Kapner & Altmark [D.C.], 157 F. 609.

"In the present case, however, the Referee has 'pierced' the corporate veil not to prevent the perpetration of a fraud on the wage claimants, for they were parties, through their union contract, to the corporate setup being as it was. Rather it appears that a fraud would be perpetrated on the creditors of the bankrupt who became such without the knowledge of the existence of Danin. Furthermore, if the wage claims of employees of Danin are upheld as claims against the bankrupt, then the bankrupt would also be liable for all other debts of Danin, including tax claims, workmen's compensation, and negligence liability. Before such a result should be al-lowed, there must be further findings to justify the setting aside of the corporate entity.

"Matter remanded to the Referee for further proceedings not inconsistent with this opinion."

As a result of the said decision, new hearings were held by the Referee.

Additional findings made by the Referee are as follows:

"5. Workmen's compensation, payroll, robbery and liability insurance touching the activities conducted in the name of Danin, Inc. were paid by checks of Danin, Inc.

"6. A contract between the pocketbook makers and Danin, Inc. was arranged by Rubin.

"7. While other premises were occupied for the activities of Danin, Inc. the rent was paid by checks of Danin, Inc.

"8. The persons employed in the activities conducted in the name of Danin, Inc. were sought by the bankrupt from the labor union of which they were members and were hired by the bankrupt to perform work in the operations conducted in the name of Danin, Inc.

"9. On occasions employees of the bankrupt were assigned by the bankrupt to work in the operations conducted in the name of Danin, Inc. and on other occasions employees engaged in the activities conducted in the name of Danin, Inc. were assigned to work in the premises of the bankrupt.

"10. Danin, Inc. never received any moneys from any source other than the bankrupt, nor did it perform any services except for the bankrupt.

"11. Bills in the name of Danin, Inc. purporting to represent contracting work were prepared by the bankrupt but such bills were only the equivalent of the advances made by the bankrupt to pay the expenses created by the activities conducted in the name of Danin, Inc. and did not represent charges that an independent contractor engaged in business for profit would make.

"12. The activities conducted in the name of Danin, Inc., were part of a single enterprise under the immediate direction and control of the bankrupt."

It must be noted that findings 5, 7 and 11 are substantially in accord with the findings suggested by Judge Hulbert (numbered 1, 3 and 7 in his opinion) and strengthen the claim of the Trustee in this proceeding. Finding 12 is a conclusion of law and does not differ in meaning from finding 13. The other additional findings of the Referee show that Rubin arranged the contract between Danin and its employees and that they were sought and hired by Rubin; that on occasions Rubin sent employees from one enterprise to another if the work was slack at one place; and that Danin's sole customer was the bankrupt. Rubin being the sole stockholder of both enterprises would be expected to arrange for the employment of Danin's employees. These additional findings are clearly insufficient to justify the Referee in ignoring the clear mandate of Judge Hulbert's decision. Furthermore the Referee did not make any findings on items 2, 4, 5 and 6 in Judge Hulbert's decision, for which items this Court does find substantial support in the record of the hearings.

■ The "corporate veil" may be pierced in cases where the corporation concerned in the suit is a front or mere conduit for carrying on the business of a parent corporation, but even here the test is whether the purpose of using the subsidiary corporation as a cloak was to commit a fraud or illegal purpose. Jenkins v. Moyse, 1930, 254 N.Y. 319, 172 N.E. 521, 74 A.L.R. 205. The New York courts are very reluctant to disregard the corporate entity. See, e. g. Rapid Transit Subway Construction Co. v. City of New York, 1932, 259 N.Y. 472, 182 N.E. 145; Berkey v. Third Avenue R. Co., 1926, 244 N.Y. 84, 155 N.E. 58, 50 A.L.R. 599; Lowendahl v. Baltimore & Ohio R. Co. 1st Dept. 1936, 247 App.Div. 144, 287 N.Y.S. 62, affirmed 1936, 272 N.Y. 360, 6 N.E.2d 56.

■ The law of New York has been set forth in two recent decisions whose fact situations are relevant to the present case. In Oceanic Insul-Lite Corp. v. Sullivan Dry Dock & Repair Corp., 1947, 191 Misc. 354, 77 N.Y.S.2d 498, at page 500, Justice Froessel stated that the "corporate entity will not ordinarily be disregarded, except where the corporate form has been used as an instrument of wrong and injustice." In refusing to allow as a set-off, against a claim by plaintiff in the action, a counter-claim by defendant against a corporation owned, operated and controlled by the same stockholders as those owning, operating and controlling plaintiff, the court said: "What we have here is simply the creation of two corporations by the same interests for the purpose of keeping separate and apart different operations in connection with the repair of ships, and there is no proof that the corporate form was used as a cloak or cover for *fraud or illegality*." 77 N.Y.S.2d at page 501 (emphasis added).

Even more in point is the decision in Gruenebaum v. Lissauer, 1945, 185 Misc. 718, 57 N.Y.S.2d 137, affirmed 1946, 270 App.Div. 836, 61 N.Y.S.2d 372. In that case the court held that the fact that the defendant New York corporation was controlled by the same copartnership as controlled a Dutch corporation which had employed plaintiff, did not make the New York corporation liable for the salary of the plaintiff. The court refused to disregard the corporate entity even though there were more extenuating circumstances than in the instant case, such as the facts that plaintiff worked for a good part of the employment period in question in the office of the defendant in New York, and that defendant paid his salary during part of that time. The court did allow plaintiff to state two causes of action against defendant corporation, based on sections of the Debtor and Creditor Law of New York, McKinney's Consol. Laws, c. 12, not relevant to this case.

On the basis of the foregoing cases, the findings of the Referee, even if accepted, would not justify the Referee's conclusion under the New York law and the allowance of the claims of the employees of Danin, Inc., would not be justified. Considered in the light of the findings which the Referee did not make, but should have made in accordance with Judge Hulbert's decision, the conclusion of the Referee is clearly erroneous.

■ There seems to be no question about the fact that Danin, Inc., and Belt-Modes, Inc., were two separate corporations which were organized at different times for two separate and distinct purposes. It is admitted that no fraud or illegality was perpetrated on the claimants in this case, but that the corporate set-up was used specifically to prevent a labor jurisdictional dispute. If these claims were to be allowed, an injustice would be done to the creditors of the Bankrupt who extended credit to the Bankrupt and had no way of knowing of the existence of these claimants as creditors.

It is the decision of this Court that the petition to review be sustained and the order of the Referee be reversed and the wage claims of the employees of Danin, Inc., be disallowed.