KLARA GELETUCHA, as Administratrix of the Estate of ANTONI GELETUCHA, Deceased, Appellant, *v.* 222 DELAWARE CORP. et al., Defendants, and 1 HOUR DURA CLEANING, INC., Respondent.

Fourth Department, March 4, 1959.

*William J. Flynn* (*John E. Drury* of counsel), for appellant.

*Jaeckle, Fleischmann, Kelly, Swart & Augupurger* (*Harry J. Kelly* of counsel); for respondent.

*Per Curiam.* Plaintiff has sued defendants 222 Delaware Corp. and 1 Hour Dura Cleaning, Inc., and two others, in negligence because of the death of her intestate. We have before us only an appeal by plaintiff from a judgment dismissing the complaint on the merits as against 1 Hour Dura Cleaning, Inc., based on an order of the court made at the close of all of the testimony.

Plaintiff's intestate died as the result of asphyxiation from fumes of a chemical known as perchloroethylene used by 222 Delaware Corp. (which we shall call " Delaware ") in its retail cleaning establishment. The action is founded in negligence, and if 1 Hour Dura Cleaning, Inc. (which we shall call " Dura ") is liable at all, there were sufficient facts presented to require the submission of the case to a jury as to negligence.

The question presented is whether the relations between Dura and Delaware were such as to make Dura responsible for Delaware's negligence. Dura was a corporation associated with six corporate retail cleaning establishments of which Delaware was one. All seven were New York State corporations doing business in the City of Buffalo. Each had the same officers, directors and stockholders. Dura did not directly engage in retail business but acted somewhat in the nature of a parent corporation. It kept the books, papers and accounts of all of the retail corporations and prepared and filed all of the income tax returns. All receipts went to Dura. All of the stores were listed in the telephone directory under the general heading, " 1 Hour Dura Cleaning, Inc., Office, Ellicott Square ", and each was listed separately under this main title. Receipts for articles left for cleaning, as well as the bags in which such articles were delivered, contained the name of Dura and the address of the individual store involved. Dura purchased the perchloroethylene for all the retail outlets. A sign in front of Delaware read, " 1 Hour Dura Cleaning."

Wind, the president of all the corporations, described Dura as " a management control company, as far as handling all the repairs, maintenance, office supervision, clerical work." He admitted that a corporate successor to Dura managed Delaware

and that Dura was in existence at the time of asphyxiation. There was a contract between the two corporations " strictly for supervision purposes " and " maintenance and clerical work * * * service of equipment * * * if something breaks down we fix it * * * just repair equipment." The manager of Delaware conferred with Wind concerning supervision, maintenance and clerical work at Delaware.

Some of these facts were adduced in direct testimony at trial. Some were brought out in an examination before trial which was not received in evidence. Upon the trial, the witness Wind claimed that much of the testimony upon the examination before trial was incorrect because of confusion and misunderstanding at the time, although he admitted the answers. This presents a question of fact as to accuracy and credibility, and if a jury should accept the correctness of the answers as made, they would constitute admissions of Dura. Wind was president and active head of Dura and his admissions would bind that corporation (*Archbold* v. *First Trust & Deposit Co.*, 254 App. Div. 924, affd. 281 N. Y. 741; *Horan* v. *John F. Trommer, Inc.*, 15 Misc 2d 347).

The question of corporate control was strenuously disputed at trial, but inasmuch as the Trial Justice refused to submit that question to the jury, in determining the propriety of the dismissal of the complaint, we must ascertain whether the plaintiff failed of proof in that respect as a matter of law or whether it appears that by no rational process could the jury base a finding in favor of the plaintiff upon the evidence presented. (*Schatten* v. *Vogel*, 7 A D 2d 718.) Unless we decide this question in favor of the defendant as a matter of law, we must hold that the question of fact should have been submitted to the jury.

The question of the liability of one corporation because of the activities of another is sometimes difficult to determine. Generally, corporate entities will be recognized and preserved in avoidance of such liability. In contract cases there will be no liability in the absence of fraud, deception or illegality of purpose (*Commerce Trust Co.* v. *Woodbury*, 77 F. 2d 478; *Matter of Belt-Modes*, 88 F. Supp. 141). These Federal cases consider and so construe the New York rule. However, this rule must be distinguished from the present case which is in negligence, and particularly in view of plaintiff's claim that regardless of corporate affiliations and relations, Dura would be liable as the management corporation of Delaware, its instrumentality and agency. It need not be argued that management and control could be so extensive and of such type and character that under it and without more the management corporation would clearly be liable for the tortious acts of the agent corporation. But in

this case there is also present the relationship and activities of the parties as above outlined all of which must be considered in determining liability or lack thereof. A statement of the general rule is contained in Fletcher's Cyclopedia Corporations (vol. 1, § 43, pp. 157–160) as follows: " Whether one is a mere agency or instrumentality or they are identical, is a question of fact to be proved by competent evidence * * *. This question of fact depends on many circumstances overcoming or failing to overcome the indicia of separate entities, sameness of members, officers and objects, and the absence of distinct interests, being indicia of agency or identity, while differences in officers, objects or conduct are indicia of separate recognizable entities * * *. Operating departmental or branch corporations, and sales corporations, afford illustrations of corporations disregarded on the facts."

In the case of *Mangan* v. *Terminal Transp. System* (157 Misc. 627, affd. 247 App. Div. 853) the plaintiffs were injured in an accident in which a taxicab was involved. The taxicab bore the name " Terminal " and an emblem or insignia. There were four taxicab corporations in the city managed by this defendant and all bore the same insignia and the name " Terminal ". The defendant had concessions from various railroads and steamship lines under which it had the privilege and was required to furnish taxicab service. The lower court held that the four operating corporations were the agents and instrumentalities through which the defendant carried on its business and that their operations were controlled by the defendant and stated at page 631: " We think the corporate entity of the four so-called operating companies should be disregarded and the defendant held liable. When one corporation controls another, and uses it as the means, agency and instrumentality by which the former carries out and performs its business, it is liable for the torts of the latter." (See, also, *Deno* v. *Standard Furniture Co.*, 190 Wash. 1; 60 Amer. Law Rev., pp. 19–30; 7 Thompson, Corporations [3d ed.], pp. 298–391.)

In our opinion, the matter should have been submitted to the jury for a determination of the factual issues involved, and the failure to do so requires a reversal and a new trial.

All concur. Present — McCurn, P. J., Kimball, Williams, Bastow and Halpern, JJ.

Judgment insofar as appealed from reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.