ARTHUR GRUENEBAUM, Suing on Behalf of Himself and All Other Creditors of N. V. OXYDE MAATSCHAPPIJ VOOR ERTSEN EN METALEN et al., Similarly Situated, Plaintiff, *v.* MENO LISSAUER et al., Individually and as Members of the Firm of M. LISSAUER & CIE., et al., Defendants.

Supreme Court, Special Term, New York County, August 3, 1945.

720

*Paskus, Gordon & Hyman* for Meno Lissauer and others, defendants.

*Schlesinger & Berliner* for plaintiff.

HECHT, J. Defendants move to dismiss the complaint, pursuant to rule 106 of the Rules of Civil Practice, upon the grounds (a) that the complaint does not state facts sufficient to constitute a cause of action; (b) that plaintiff has not legal capacity to sue, and (c) that the complaint does not allege any grounds for the appointment of a receiver of the property of defendant Associated Metals & Minerals Corporation (hereinafter called " Associated "). Defendants move, in the alternative, (a) for an order, pursuant to rule 103, striking out certain allegations of the complaint upon the ground that they are irrelevant and scandalous, and may tend to prejudice and embarrass the

fair trial of the action; and (b) for an order, pursuant to rule 90, directing the service of an amended complaint separately stating the several causes of action defendants claim are alleged in the complaint.

The notice of motion states that it is made on behalf of defendants Associated and Rothschild, but the briefs of both parties treat the motion as on behalf of the defendant Lissauer as well. The court will, therefore, regard these three defendants as the moving parties.

The allegations of the first cause of action are as follows:

Plaintiff is a resident of New York.

During the transactions described in the complaint defendant Lissauer owned a 60% interest and one Griessmann (also a defendant, but not served with process) owned a 40% interest in M. Lissauer & Cie., a copartnership (hereinafter called "the firm"). The firm, having its principal office in Cologne, Germany, transacted a chemical and mining business throughout the world. In the transaction of such business, the firm organized many corporations, all of which it owned and dominated, "and they were owned and operated by M. Lissauer & Cie. in conjunction with its own operations as a single integrated business of various departments and branches, all of which was designated by M. Lissauer & Cie. as the 'Combine'." Defendants Lissauer and Griessmann used the property, assets and business of the firm and of the various corporations and concerns constituting the members of the combine, interchangeably, and transferred all or parts of the assets from time to time from one member to another for convenience and to expedite the business and affairs of the combine and for their own personal aggrandizement.

Among the corporations so organized by the firm were defendant Associated, a domestic corporation located in New York City, and a Dutch corporation located in Amsterdam, called N. V. Oxyde Maatschappij Voor Ertsen En Metalen (hereinafter called "Oxyde").

Until the outbreak of hostilities in Europe, Associated performed the function in such integrated enterprise of agent and shipping representative and acted as such for the firm and Oxyde in transactions involving many millions of dollars, attended to financing and other matters for the firm and Oxyde in the Western hemisphere, and handled the output of certain zinc producers in Mexico, whose output was controlled by Oxyde under contracts.

Defendant Lissauer owned 60% and Griessmann owned 40% of the stock of Oxyde. The firm, which owned 3,000 shares of the preferred stock and 3,325 shares of the common stock of Associated, transferred all of the latter and 2,100 shares of the former to Oxyde, which is still the owner thereof. Such stock has a fair value of over $350,000.

In February, 1935, plaintiff entered into a written contract of employment with Oxyde in Amsterdam, which, as modified by subsequent agreements in writing, forms the basis of the present action. Under this contract, plaintiff was to act as manager of the chemical division of Oxyde until July 31, 1942. He was to receive a stipulated salary plus a percentage of the net profits of the business done for and by said chemical division. Certain products were specified as included in the chemical division, and plaintiff's compensation on such business was to be computed '' whether the same was transacted in the name of Oxyde or in the name of any other company in the Combine.'' In paying such compensation, Oxyde enumerated as proper deductions from the gross profits certain specific expenses incurred by specified members of the combine, including defendant Associated.

In November, 1939, plaintiff and Oxyde agreed in writing that plaintiff should proceed to New York City and make his offices with Associated, there to continue his employment as manager of the chemical department of Oxyde and of the Combine. Plaintiff did so, and during part of the period of his employment in New York City, the salary stipulated in his contract with Oxyde was paid to him by Associated. In March, 1941, defendant Lissauer, acting on behalf of Oxyde and of the Combine, prevented further performance by plaintiff, who has otherwise duly performed all of the terms of his contract and, except as so prevented, plaintiff was ready, able and willing to perform his contract of employment.

As a result of the foregoing, plaintiff asserts a claim of $64,025 against Oxyde. This consists of $41,928, representing his percentage of the net profits for the years 1940 and 1941 and up to the termination date of his contract on July 31, 1942; $8,407 representing a balance due on his share of the profits for 1937 and 1938; and a balance of $13,690 of his annual salary for the period ending July 31, 1942.

Plaintiff alleges that by reason of the foregoing, defendants Associated and Lissauer are indebted to plaintiff in a sum exceeding $64,025. This liability is predicated upon the theory that, under the circumstances herein, equity should disregard

the corporate entity of Oxyde and impose liability for its contractual obligations upon defendants Lissauer and Associated.

As a part of the same cause of action, the complaint then alleges that there are other creditors of Oxyde and Associated who reside or do business in New York, and for whose benefit this suit is prosecuted. At the time of the invasion of Holland on May 10, 1940, Oxyde owned assets in the United States aggregating $687,000, consisting of (a) a bank balance of $282,000, (b) an insurance claim of $55,000 collected by Associated and placed in its own account and (c) 2,100 shares of the preferred stock and 3,325 shares of the common stock of Associated, having a fair value in excess of $350,000. Defendants Lissauer and Griessmann, sole stockholders of Oxyde, planned to strip Oxyde of the foregoing assets and vest ownership thereof in themselves, in corporations owned or controlled by them, or in nominees for their account, without any consideration therefor to Oxyde. In furtherance of such plan, they caused the following things to be done: (1) the certificates of stock of Associated were indorsed over to defendant Rothschild without any consideration, and the latter is now holding them for the account of Lissauer and Griessmann; (2) Oxyde's bank deposits of $282,000 were paid over to Associated, which used these funds to consummate in its own name, but acting as agent for Oxyde, an advantageous joint venture which Oxyde had negotiated with the American Zinc Company. This will hereinafter be called "the zinc venture". Defendants then deprived Oxyde of its ownership of the interest in this zinc venture, and vested it instead in defendants Lissauer, Associated, Rothschild and Griessmann. Associated credited Oxyde upon its books for the $282,000 thus advanced, but the interest in the zinc venture thus vested in defendants has a value substantially exceeding that amount because it netted in excess of $250,000 in annual profits; (3) Associated, as agent for Oxyde, collected $55,000 on an insurance claim for the latter. Associated placed this sum in its general account, but credited Oxyde therefor on its books; (4) Lissauer and Griessmann withdrew $160,000 from the assets of Oxyde for their own use and benefit; (5) Lissauer and Griessmann served notice on Associated that Oxyde was indebted to them on fictitious claims aggregating $301,000 and prohibited Associated from making any payment to Oxyde or to its New York creditors until the foregoing claims were satisfied.

On May 11, 1940, the President of the United States froze the assets of Dutch nationals in the United States. On May

24, 1940, the Government of The Netherlands promulgated a decree (discussed more fully below), which vested in such government ownership of all assets located outside of Holland, owned by Dutch nationals and corporations domiciled in Holland at the time of the invasion. Subsequently, specific blocking decrees were issued by the United States Government, freezing the credits in favor of Oxyde upon the books of Associated as well as the assets of Associated in the United States, and further requiring Associated to operate by special licenses for short periods of time. Upon the liberation of Holland the foregoing restrictions were to be removed.

In fraud of the creditors of Oxyde and Associated, defendants Lissauer and Griessmann planned to remove the assets of Associated, and the assets then or formerly of Oxyde, from the State of New York and from the United States, and to vest ownership thereof in themselves and in other members of the Combine or nominees for their account. In furtherance of such plan, they withdrew from Associated sums in excess of $500,000, which amount is entered on the books of Associated as an indebtedness due to it from Lissauer and Griessmann.

The transfers and disposition of the property of Oxyde and Associated, set forth in the first cause of action, " were made with the purpose and intent of defrauding the resident New York creditors of said respective corporations and to remove from the State of New York all the assets of such corporations." These transactions have rendered Oxyde insolvent, and, when and as consummated, will render Associated insolvent.

For his second cause of action, plaintiff realleges all of the foregoing. He then alleges that the transfers by defendants Lissauer and Griessmann of Oxyde's funds aggregating $337,000 to defendant Associated, and the transfer of the shares of stock of Associated owned by Oxyde to defendant Rothschild, were made at times when Oxyde was insolvent, or rendered Oxyde insolvent. Such transfers were made without any fair consideration.

Alleging in both causes of action that he has no adequate remedy at law, plaintiff demands judgment (1) that the amount of his claim against Oxyde be determined; (2) that said claim be adjudged a valid claim against defendants Lissauer and Associated; (3) that all other creditors of Oxyde and of Associated similarly situated be required to establish their claims and their rights to participate in the proceeds of any recovery herein; (4) that ownership of the stock of Associated, registered in the name of defendant Rothschild, be adjudged to be the

property of Oxyde; (5) that Oxyde be adjudged to be the lawful owner of the participations claimed by defendants Lissauer, Associated and Rothschild and by Griessmann in the zinc venture; (6) that the claims, if any, of Lissauer, Rothschild and Griessmann against Oxyde and Associated, and the claim of Associated against Oxyde, be adjudged subordinate to the payment of the New York creditors of said respective corporations; (7) that an equity receiver be appointed to preserve all property of Oxyde and Associated in the State of New York for the protection of the interests of their New York creditors, and to preserve such property *pendente lite* for the protection of said creditors. Such property shall include (a) the credits in favor of Oxyde on the books of Associated, amounting to $337,000, (b) the stock of Associated owned by Oxyde before transfer thereof to Rothschild, (c) the interest in the zinc venture, and (d) the assets of Oxyde and of Lissauer situated within the State of New York; (8) that the foregoing transfers complained of be vacated and a receiver be appointed *pendente lite* and by the final judgment, to take charge of such assets, and (9) that defendants be enjoined, *pendente lite* and by the final judgment, from disposing of any of the assets enumerated in (7) above.

Upon the facts alleged, the court would not be justified in disregarding the corporate entity of Oxyde and holding defendant Lissauer liable for its contractual obligation (*Rapid T. Subway Constr. Co.* v. *City of N. Y.*, 259 N. Y. 472, 487, 488; *Berkey* v. *Third Avenue Railway Co.*, 244 N. Y. 84, 95). Oxyde was doing business as permitted by the laws of the country of its incorporation, was an entity recognized by the law, had its own assets and property, maintained its own organization, and had an independent life; therefore no liability for wrong done by the corporation may be asserted against its controlling stockholder (*Rapid T. Subway Constr. Co.* v. *City of N. Y., supra*).

Still less is there any basis for holding defendant Associated liable for Oxyde's contractual obligation, for Associated does not control Oxyde, but, rather, is controlled by it, or at least, both corporations are subject to a common control. The fact that, on the plaintiff's agreement with Oxyde, the business done by Associated and other members of the Combine was considered in ascertaining the percentage of the profits to be paid by Oxyde to plaintiff, does not render Associated liable on such contract. Neither may such liability be predicated upon the fact that plaintiff used its offices when working for Oxyde in New York City, nor that for a period Associated paid him the salary due

under his contract with Oxyde. Corporations allied in interest often perform such services for one another without thereby assuming the other's obligation.

The balance of the first cause of action and the entire second cause of action are based upon article 10 of the Debtor and Creditor Law, which is an enactment of the Uniform Fraudulent Conveyance Act. The following sections are pertinent on this motion:

"§ 273. *Conveyances by insolvent.* Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

"§ 276. *Conveyance made with intent to defraud.* Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

"§ 278. *Rights of creditors whose claims have matured.* 1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,

"a. Have the conveyance set aside or obligation annulled to the exent necessary to satisfy his claim, or

"b. Disregard the conveyance and attach or levy execution upon the property conveyed.

"§ 279. *Rights of creditors whose claims have not matured.* Where a conveyance made or obligation incurred is fraudulent as to a creditor whose claim has not matured he may proceed in a court of competent jurisdiction against any person against whom he could have proceeded had his claim matured, and the court may,

"a. Restrain the defendant from disposing of his property.

"b. Appoint a receiver to take charge of the property,

"c. Set aside the conveyance or annul the obligation, or

"d. Make any order which the circumstances of the case may require."

It is clear that the complaint states two good causes of action in respect of these alleged fraudulent conveyances by Oxyde; the first pursuant to section 273, based on a transfer without consideration, with resultant insolvency to Oxyde, in which case

the actual intent is immaterial; the second, pursuant to section 276, based on the actual intent to defraud. As a creditor of Oxyde whose debt has matured, even though not reduced to judgment, plaintiff may proceed under section 278 against the transferees (*American Surety Co.* v. *Conner*, 251 N. Y. 1, 8; *Soc. Milion Athena* v. *Nat. Bk. of Greece*, 281 N. Y. 282, 293, 295). Associated, Lissauer, Griessmann and Rothschild are all proper parties defendant in respect of the interest in the zinc venture, which was transferred to them. In addition, Rothschild is a proper defendant as to the stock of Associated transferred to him; Associated is a proper defendant as to the bank balances of $282,000 transferred to it and the insurance claim of $55,000 collected by it; Lissauer and Griessmann are proper defendants as to the $160,000 withdrawn by them, and also as to the fictitious claim of $301,000 asserted by them, since the statute covers fraudulent obligations as well as fraudulent conveyances.

Each transfer does not constitute a separate cause of action, as urged by defendants; it is the whole series of transfers which is actionable where it results in the transferor's insolvency or where it is made with actual intent to defraud, since it may be only the aggregate of all which renders the transferor insolvent or establishes actual intent to defraud, while one or more, taken alone, may not have this result.

I do not agree with defendants' contention that the allegations in the complaint are merely conclusory; they set forth sufficient facts to establish a fraudulent conveyance or a fraudulent obligation as to each of the foregoing transactions. The statement that Associated has credited Oxyde on its books with the bank balances of $282,000 and the $55,000 collected on the insurance claim, does not initiate the fraud in the conveyance. If these moneys are really the property of Oxyde, and their transfer by Oxyde has rendered it insolvent or was made with the intent to defraud, they cannot be retained by Associated as belonging to it, but must be restored to Oxyde or its creditors.

Plaintiff's claim in these two causes of action, however, is too broad. Plaintiff may act in his own right alone. " The creditor in such an action may ' have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim.' (§ 278.) He is not entitled to a judgment setting it aside completely and subjecting the property to the claims of other creditors through a receiver and judicial administration of the affairs of the debtor * * *. Since the plaintiffs have not any right to maintain a derivative action, the motion to

strike out the parts of the complaint appropriate only to such an action should have been granted." (*Soc. Milion Athena* v. *Nat. Bk. of Greece, supra,* pp. 293, 295.)

Defendants urge that plaintiff is not the proper party in interest because of the decree of the State of The Netherlands, dated May 24, 1940. In *Anderson* v. *N. V. Transandine Handelmaatschappij* (289 N. Y. 9), the court affirmed the order of Special Term, which held that this decree necessitated the vacating of an attachment levy against intangible property in this State owned by a Dutch corporation, upon the ground that such decree " divested the debtor of all title to the property and vested it in the State of the Netherlands ". Upon the authority of the decision of Mr. Justice SHIENTAG in the foregoing case (28 N. Y. S. 2d 547), Mr. Justice SCHREIBER vacated a warrant of attachment obtained by this plaintiff in respect of some of the property whose transfer is the subject of the present suit (*Gruenbaum* v. *N. V. Oxyde,* N. Y. L. J., Aug. 27, 1941 p. 439, col. 7).

These authorities do not affect plaintiff's right to recover in the case at bar. Where a creditor seeks to attach intangible property, the basis of the attachment is that the property is owned by his debtor. That basis, of course, was removed when title to the intangible property passed from his debtor to the State of the Netherlands. But here plaintiff is proceeding on the basis of an independent right given to him by article 10 of the Debtor and Creditor Law, authorizing him to sue the transferee directly in order to have the conveyance set aside to the extent necessary to satisfy his claim, or to collect the amount thereof directly from the transferee. This right is not affected by the independent right of the State of The Netherlands to proceed to set aside the fraudulent conveyances, at least in the absence of any affirmative action by such Government.

In the usual case, a debtor who has made fraudulent transfers becomes insolvent, and in many cases title to its property has vested in a trustee in bankruptcy or other court-appointed receiver, or in a statutory conservator, as in the case at bar. To hold that in such cases all individual creditors are deprived of their individual and independent right of action conferred by sections 278 and 279 of the Debtor and Creditor Law, in the absence of affirmative action by the one in whom title has vested, would frustrate the whole purpose of the Uniform Fraudulent Conveyance Act.

The United States Bankruptcy Act provides that a transfer made by a debtor which, under any State law applicable

thereto, is fraudulent against any creditor, '' shall be null and void as against the trustee of such debtor. \* \* \* All property of the debtor affected by any such transfer shall be and remain a part of his assets and estate, discharged and released from such transfer, and shall pass to, and every such transfer or obligation shall be voided by, the trustee for the benefit of the estate.'' (Bankruptcy Act, § 70, subd. e; U. S. Code, tit. 11, § 110, subd. [e].) Even in the face of this positive and exclusive vesting of the right in the trustee in bankruptcy, it has been held that the creditor may not be deprived of his right to assert the claim until and unless the trustee in bankruptcy has elected to assert it. '' It would be a denial of justice to hold that a creditor is barred from prosecuting a suit to recover his debt merely because the trustee does not seek to enforce the claim on the creditor's behalf.'' (*Lowendahl* v. *Baltimore & Ohio R. R. Co.*, 247 App. Div. 144, 148, affd. 272 N. Y. 360.)

The instant case is much stronger, for here there is no statute which purports to vest any such exclusive right in the State of The Netherlands. If the latter desires to make any application to the court for any relief to insure equitable distribution of any amount recovered by plaintiff, that will be the time to decide whether the vesting order affects plaintiff's right to retain the recovery. Defendants may not urge that they be permitted to retain the fruits of these fraudulent transfers because other creditors might also be entitled to participate in the benefits of a recovery. '' By the exercise of diligence any creditor may obtain a preference over other creditors at least until the court takes over the property of the debtor and administers it for the equal payment of all creditors.'' (*Soc. Milion Athena* v. *Nat. Bk. of Greece*, 281 N. Y. 282, 294; *supra.*)

Under section 278 of the Debtor and Creditor Law, plaintiff has the additional right of obtaining a judgment against any transferee to whom his debtor has fraudulently conveyed property, for the value of such property, but not exceeding the amount of his claim (*Lowendahl* v. *Van Bokkelen, Inc.*, 260 N. Y. 557). This means that plaintiff will become a creditor of Associated to the exent of $64,025 after he shall have established (a) that Oxyde is indebted to him in that amount and (b) that there was fraud in the transfer by Oxyde to Associated of the interest in the zinc venture, or of the bank balances of $282,000, or of the $55,000 insurance claim collected by Associated.

As a creditor of Associated, plaintiff may proceed against Lissauer and Griessmann in respect of the $500,000 withdrawn by them from Associated. In the same capacity plaintiff may proceed against Lissauer, Griessmann and Rothschild in respect of the transfer to them by Associated of the interest in the zinc venture. This applies even though plaintiff, as creditor of Oxyde, seeks to proceed against these defendants and Associated as being fraudulent transferees from Oxyde of the same property. At the trial, plaintiff may not be able to establish that the conveyance of this interest from Oxyde to Associated was fraudulent, but he may be able to establish fraud in the transfer of the $282,000 of bank balances or the collection of the $55,000 insurance claim. In that event, he will become a creditor of Associated and in that capacity could assert that even if Associated owned the zinc venture at the outset or properly acquired it from Oxyde, the transfer of an interest therein by Associated to Lissauer, Griessmann and Rothschild was fraudulent as to plaintiff.

The complaint contains facts sufficient to support two causes of action by plaintiff as a creditor of Associated: one pursuant to section 273 of the Debtor and Creditor Law, based on a transfer without consideration, with resultant insolvency to Associated; the other pursuant to section 276, based on an actual intent to defraud. While these two causes of action are not clearly pleaded in the present complaint, plaintiff may have an opportunity to replead them properly, since he has alleged the facts necessary to support them.

These causes of action as a creditor of Associated are, of course, separate and distinct from the causes of action as a creditor of Oxyde. In this case, only Lissauer, Rothschild and Griessmann are proper defendants; and the only transactions which may be included are the transfer by Associated of the interest in the zinc venture, and the $500,000 withdrawn by Lissauer and Griessmann.

Since plaintiff's claim against Associated has not yet matured, he may in these causes of action seek the proper relief specified in section 279 of the Debtor and Creditor Law. While he may not bring a representative action on behalf of other creditors, he may ask that defendants, in these causes of action, be restrained from disposing of their property (subd. a), that a receiver be appointed to take charge of the property (subd. b) or that the conveyance be set aside or the obligation annulled (subd. c). The court is not now passing on whether any or all of these remedies will be warranted at the trial, but merely

holding that a prayer for such relief may not be dismissed on motion under rule 106, when the statute specifically authorizes such remedies. Plaintiff will be required, pursuant to rule 90, to serve an amended complaint in order that defendants may properly move with respect to the several causes of action pleaded. He should specify who are the defendants in each cause of action and the relief to which he deems himself entitled in respect to each cause of action.

Plaintiff should separately state and number his two causes of action as a creditor of Oxyde against Lissauer, Griessmann, Rothschild and Associated, based, respectively, on sections 273 and 276 of the Debtor and Creditor Law. In these causes of action plaintiff may reallege the relationship between Oxyde and these defendants, as bearing on the fraudulent nature of the conveyances. In these causes of action, however, plaintiff shall omit all allegations seeking to make them representative on behalf of other creditors of Oxyde, and the prayers for relief in respect of Oxyde set forth in paragraphs (3), (6), (7), (8) and (9) of his present prayer for relief.

Plaintiff should separately state and number his two causes of action as a creditor of Associated against Lissauer, Griessmann and Rothschild, based, respectively, on sections 273 and 276. Here he may allege the relationship between Associated and these defendants. In these causes of action, plaintiff shall omit all allegations seeking to make them representative on behalf of other creditors of Associated, and may seek only the relief specified in section 279 of the Debtor and Creditor Law.

There remains for disposition the motion under rule 103, to strike out certain allegations on the ground that they are irrelevant and scandalous, and may tend to prejudice and embarrass the fair trial of the action.

The motion is granted as to paragraphs 30, 31 and 32. They allege a fraudulent transfer of assets to Oxyde from the firm and other members of the Combine (not including Associated). Plaintiff, as a creditor of Oxyde, was not injured by these transactions; rather, he was aided by them, because they increased the assets of his debtor.

The motion is granted as to the first ten lines of paragraph 36 up to but not including the words " the defendant Oxyde ". These allege that before the outbreak of hostilities, many Holland concerns transferred assets to the United States. This litigation is concerned with what was done by Oxyde, not by any other Holland concerns.

The motion is denied as to paragraph 41 and as to the last sentence of paragraph 47. It is likewise denied as to that portion of paragraph 54 which begins with the words " to avoid income tax liability "; this may be alleged as the purpose of the transfers in order to show actual intent to defraud.

The motion is granted as to the balance of paragraphs 47 and 54, as to the last sentence of paragraph 53 and as to all of paragraphs 34, 35, 48 and 49. These allegations have no relevance to the causes of action alleged and their sole and obvious purpose is to prejudice the fair trial of the action.

Motion is granted to the extent indicated above. Amended complaint to be served within twenty days after service of a copy of this order, with notice of entry.