Patrick J. Picariello, J.
Hearing on an application made by the receiver herein (Morton Baum) for an order pursuant to CPLR 5227 directing the third party (Alvin Herman) to pay over to said receiver a judgment recovered by the judgment debtor against said third party. During the pendency of this proceeding the receivership was extended to include another judgment allegedly assigned to the judgment creditor.
The judgment debtor, H. D. S. Mercantile Corp. (hereinafter referred to as HDS), defaulted on the application and on the hearing. The adverse claimant, Park Place Cleaners (hereinafter referred to as Park), a corporation organized in the State of New Jersey, was, by order of this court, granted leave to intervene in this proceeding. It contends that it is the legal and equitable owner of the aforesaid judgment against the third party by virtue of an assignment executed by HDS and delivered to it before the institution of these proceedings.
The receiver places in issue the validity of said assignment, declaring it to be fraudulent with respect to HDS’s creditors and designed in contravention of law to strip HDS of all of its assets so as to defeat the rights of creditors thereto.
This constitutes the only issue for determination, other issues created by the affidavits and pleadings filed and submitted on this application having been disposed of by order of this court dated October 16, 1964.
During the course of the hearing Park also contended that the issue of the validity of the assignment had been contested in the Bankruptcy Court and that its finding therein constitutes res judicata on this court.
The following constitutes a brief recital of the dispositive facts found by the court.
HDS is a commercial factor. Specifically, it is engaged in the business of guaranteeing to third-party vendors the payment for merchandise purchased by its customers, or accounts, for which it exacted a consideration. A vast majority of the claims against it, some of which have been reduced to judgments, represent unpaid-for merchandise delivered by the vendor-claimants to HDS’s customers, or accounts, and arise out of and by virtue of the afore-mentioned guarantees.
Seymour Schwartz, a certified public accountant, was the sole stockholder and president of HDS and with his wife, the secretary, constituted the board of directors.
In connection with its business, HDS entered into various agreements with third parties who advanced moneys for participation with it in various specific accounts maintained by it with its customers. The agreements created joint ventures between *663 the third parties, as participants, and HDS in specifically named accounts. Bach agreement contained a guarantee of performance and indemnification agreement by Schwartz individually. The total investment of the third parties in the separate ventures was $287,000.
Prior to October 19,1960, the participants were pressing HDS and Schwartz for payment. Also prior to October 19, 1960, that is, on May 31, 1960, lawsuits arising out of the various afore-mentioned guarantees in the aggregate sum of $17,000 were pending against HDS. This amount was increased to approximately $70,000 by May 31, 1961, exclusive of contingent liabilities and judgments payable in the sum of approximately $22,000.
It became important therefore to Schwartz to relieve himself of his personal liability to the afore-mentioned participants, and the following machinations, solely and completely contrived by him, occurred.
There was in existence at said time another of Schwartz’-corporations, known as Park Place Cleaners. Here, too, Schwartz was the sole stockholder and president, and with his wife, the secretary, constituted the board of directors. The office of Park was at the home of Schwartz. Park was also engaged in the financing business. On October 19, 1960, all of the participants entered into an agreement with HDS, Park and Schwartz, whereby they released and surrendered their interests in the accounts in which they participated with HDS and received in lieu thereof a note made by Park for their amounts invested and became general creditors of Park. HDS became indebted to Park in the sum of $287,000, the total amount advanced by the participants to HDS. In addition to becoming entitled to $287,-000 from HDS, Park became the owner of the participants’ interest in the accounts in return for the notes that it so delivered to the former participants. By virtue of this transaction Schwartz was released from personal liability based on his indemnification agreement.
On the same date, all of the accounts and notes receivable held by HDS, comprising practically all of its assets, in the approximate sum of $470,000, were assigned to Park under a factoring agreement which provided that Park was to pay HDS 80% of the net amount thereof and to charge one twentieth of 1% per day on the average purchase moneys advanced and outstanding under the agreement. The agreement also provided that all accounts receivable, whether then in existence or arising in the future, were deemed to have been assigned immediately upon their coming into existence as collateral security for any and all *664 obligations due Park whether then in existence or thereafter incurred with the same force and effect as if in each instance HDS had specifically assigned each individual account to Park.
No cash or other consideration passed from Park to HDS at that time. There was no normal business purpose of HDS served by this transfer. The moneys thereafter paid by Park to HDS represented collections on the assigned accounts receivable, but the new accounts receivable created by HDS with funds received by it from Park were deemed assigned to Park. HDS paid Park interest at the rate of 18% per annum on such moneys received from Park, which in turn paid the former participants, now noteholders, interest at the rate of 12% per annum. Subsequent to the assignment HDS remained in business and judgments were obtained against it on account of obligations existing prior to the assignment and on obligations thereafter incurred. These judgments remain unpaid.
An examination of the above-ascertained facts and circumstances surrounding the execution and delivery of the subject assignment reveals the latter to be sui generis, a genius of uniqueness. Consequently, it behooves this court not to apply to such ascertained facts rigidly defined legal formulae definitely prescribed as such or exactly deduced from authoritatively presented premises.
Ordinarily, the question of fraud involves the element of intent. Since it is impossible to look into Schwartz’ mind for the purpose of ascertaining his intent, it is necessary to consider the circumstances surrounding the assignment and determine the intent from what he did or failed to do. And, by reason of its nature, fraud is usually very difficult to prove by direct evidence, and such proof is unnecessary. (See Pergrem v. Smith, 255 S. W. 2d 42, 44 [Ky.]; Battjes v. United States, 172 F. 2d 1, 5.) The issue of fraud is commonly determined by certain recognized indicia, denominated “ badges of fraud,” which are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them. (Pergrem, supra; also Leonardo v. Leonardo, 251 F. 2d 22, 27; Bentley v. Caille, 289 Mich. 74, 78.) Inadequacy of consideration, secret or hurried transactions not in the usual mode of doing business, and the use of dummies or fictitious parties are common examples of “ badges of fraud.” As was said in the Bentley case (supra): “No effort to hinder or delay creditors is more .severely condemned by the law than an attempt by a debtor to place his property where he can still enjoy it and at the same time require Ms creditors to remain unsatisfied.” Although “ badges of fraud ” are not conclusive and are more or less strong or weak *665 according to their nature and the number occurring in the same case, “ ‘ a concurrence of several badges will always make out a strong case ’ ”. (See Timmer v. Pietrzyk, 272 Mich. 238, 242; Aiken v. United States, 108 F. 2d 182, 183; Battjes, supra.)
So that, mere adroitness of technique should not be permitted to obscure the real facts. Whether a transaction constitutes a fraudulent transfer must be determined from its intent and effect and not from its form; a court will look at the results and not at the devious ways by which they were accomplished. (Brown Packing Co. v. Lewis, 185 Misc. 445; Leifer v. Murphy, 149 Misc. 455.)
There can be no question but that this assignment was voluntary. And a voluntary assignment made when the evidence shows that there are existing indebtednesses is presumptively fraudulent. (See Collier, Bankruptcy [13th ed.], p. 1772 [b]; Amer. B. Rep. Digest, § 564.)
And since the record reflects that at the time of the making of the voluntary assignment there were indebtednesses of HDS then in existence, the burden is on HDS to rebut the presumption of fraud. (See Collier, supra, p. 1783 [6]; Amer. B. Rep. Digest, § 679; also Smith v. Reid, 134 N. Y. 568; Kerker v. Levy, 206 N. Y. 109; Ga Nun v. Palmer, 216 N. Y. 603; also Klinger v. Hyman, 223 F. 257.)
As was stated by Judge Cardozo in the case of Ga Nun v. Palmer (supra, p. 611): “ a transfer without consideration by one who is then a debtor raises a presumption of fraud. The creditor may stand upon that presumption until it is repelled.”
That there was no consideration for the assignment is made abundantly clear by the facts and circumstances surrounding it. The judgment debtor did nothing to rebut this presumption. No proof was offered to show HDS’s solvency at the time of the assignment. On the contrary, that it was not solvent at the time -is eloquently expressed by HDS’s silence and documented by the outstanding claims existing and unsatisfied judgments recovered against it both before and after the assignment.
Although it is reasonably clear that, if there is not evidence sufficient in itself to show actual intent to defraud, a conveyance or assignment cannot be set aside under section 276 of the Debtor and Creditor Law, section 273 is founded upon another theory, which is that a transfer by an insolvent is fraudulent irrespective of any actual intent. And we think this means that if one indebted makes a voluntary transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent. (Cole v. Tyler, 65 N. Y. 73; Smith v. Reid, 134 N. Y. 568; Kerker v. Levy, 206 N. Y. 109.)
*666 And the presumption of fraud in this case has no relation to actual fraud and cannot be met by proof that such mala fides did not exist. (See Collier, 13th ed., p. 1783 [6]; Amer. B. Rep. Digest, § 678.)
HDS’s failure to rebut this presumption of fraudulent intent under the circumstances surrounding the execution and delivery of the subject assignment renders it incumbent upon Park to show its innocence of such intent. (Berlenbach v. Bischoff, 137 Misc. 719, affd. 231 App. Div. 734; Emmi v. Patane, 128 Misc. 901.)
Ordinarily, under such circumstances it becomes incumbent upon the assignee to come in and defend his title, both as to fair consideration and as to honest purpose. But, in applying this legal principle to the instant proceeding, it should be borne in mind that both HDS and Park are artificial persons or legal entities created by law and solely owned, controlled and dominated by Schwartz.
The law permits the incorporation of a business for the very purpose of escaping personal liability. (Natelson v. A. B. L. Holding Co., 260 N. Y. 233, 238; Rapid Tr. Subway Constr. Co. v. City of New York, 259 N. Y. 472, 488.) And, generally speaking, the doctrine of “ piercing the [corporate] veil ” is invoked to 1 ‘ prevent fraud or to achieve equity.” (International Aircraft Trading Co. v. Manufacturers Trust Co., 297 N. Y. 285, 292; see Halstead v. Globe Ind. Co., 258 N. Y. 176, 179; Jenkins v. Moyse, 254 N. Y. 319, 324; Quaid v. Ratkowsky, 183 App. Div. 428, affd. 224 N. Y. 624.)
Fictions of law should not be permitted to work any wrong. Judges will appreciate that, as rules are fictions “ intended for the sake of justice, ’ ’ they should not work injustice in any particular case, and must be moulded in furtherance of those equitable objects to promote which they were designed.
Moreover, the fraudulent intent as gleaned and presumed (Ga Nun v. Palmer, supra) from the facts and circumstances surrounding the execution and delivery of the subject assignment and its intended effect, guided to realization and fruition by its architect, Schwartz, as found by this court (Brown Packing Co. v. Lewis, supra; Leifer v. Murphy, supra), behooves the court to employ wide discretion, recognize the unique circumstances and employ flexible standards as opposed to fixed rules. The court should be encouraged to a “ full judicial finding of the grounds of decision; certainty obtained by mechanical application of fixed rules to human conduct has always been illusory,” as Dean Roseoe Pound summed up the futility of the search for juristic certainty and completeness,
*667 Schwartz’ machinations remind the court of the language of Judge Hand in Matter of Abesbaum (70 F. 2d 628), as follows: “ The stories of bankrupts who conceal assets have assumed a form almost as conventional as the plots one finds in the plays of Plautus and Terence. Indeed, if they were told with art and possessed more fertility of imagination, a new anthology might be gathered for American literature from the bankruptcy field. As it is, they contain little more than standardized forms of falsehood so often reiterated as to be neither credible nor interesting. ’ ’
Disregarding the pretenses and dealing with the realities, this court holds that the assignment of accounts receivable on October 19,1960 constituted a fraudulent transfer within the purview of article 10 of the Debtor and Creditor Law. Viewing the whole course of conduct involving many facts and inferences the court finds that the transfer was made with actual intent to hinder, delay or defraud creditors. If nothing more, HDS hindered and delayed the unsatisfied judgment creditors and other creditors then in existence. An intent to hinder and delay creditors is as much within the statute as an intent to defraud them. Section 276 of the Debtor and Creditor Law is in the disjunctive. The case at bar is a good instance of the evils sought to be reached by the statute. HDS in collusion with Park, both owned and dominated by Schwartz, stripped itself of all its property which Graf co (the judgment creditor in this proceeding) could utilize to satisfy its claim. By so doing it effectively delayed and hindered Q-afco in the collection of its claim out of the abundant assets exposed to execution before the conveyance. This was the actual and obvious purpose and result of the contrivance which the statute was designed to defeat. (Hearn 45th St. Corp. v. Jano, 283 N. Y. 139; Shapiro v. Wilgus, 287 U. S. 348; Natelson v. A. B. L. Holding Co., 260 N. Y. 233, supra; Sabatino v. Cannizzaro, 243 App. Div. 20; Burch v. Jeruss, 281 App. Div. 991; Gruenebaum v. Lissauer, 185 Misc. 718, affd. 270 App. Div. 836; Matter of Deitz, 196 Misc. 893.) Under section 276 the questions of adequacy of consideration or transferror’s solvency are not significant. (Scholtz v. Yastrzeimski, 247 App. Div. 823; Pattison v. Pattison, 301 N. Y. 65.)
The transaction must be condemned even had there been an absence of an actual intent. Assuming, arguendo, section 276 of the Debtor and Creditor Law is inapplicable, the transaction falls within the condemnation of section 273 of the Debtor and Creditor Law. The voluntary transfer without consideration of practically all of the assets of HDS left the claims of others of its creditors, either by way of judgments, fixed liability or *668 contingent liability (Debtor and Creditor Law, § 270) impossible of collection. The transfer rendered HDS insolvent. A voluntary conveyance without consideration by one who is a debtor raises a presumption of fraud, and the burden is cast upon the recipient to establish solvency. (Ga Nun v. Palmer, 216 N. Y. 603, supra; Cohen v. Benjamin, 246 App. Div. 866; Barton v. Race, 266 App. Div. 1042; Wilson v. Robinson, 83 F. 2d 397; Cating Rope Works v. Johnson, 22 Misc 2d 284.) The presumption was not overcome by the credible evidence elicited in this proceeding on the assignee’s behalf.
Park urges that the issues of insolvency, consideration and fraud were previously adjudged in the bankruptcy proceedings against HDS in which Gafco was one of the petitioning creditors. The issues raised by the involuntary petition in bankruptcy and the answer thereto were whether HDS, the alleged bankrupt, while insolvent, transferred property consisting of the accounts receivable hereinabove set forth, with intent to hinder, delay or defraud its creditors within the prescribed four-month period next preceding the filing of the petition in bankruptcy. (Bankruptcy Act, § 3, U. S. Code, tit. 11, § 21.)
It may be true that any issue which was litigated or could have been litigated in the Bankruptcy Court is barred by reason of res judicata from being raised in the instant proceeding. The essence is the fact that the Bankruptcy Court had already been presented with the subject sought to be litigated and has rendered a judicial determination therein. Such is not the case here.
Upon the trial before the Referee in bankruptcy, the attorney for petitioning creditors conceded that the assignment of the accounts receivable was made nine months prior to the filing of the petition. Upon such concession of the nonexistence of the fact that the act charged occurred within the four-month period, indispensable there, but immaterial here, the petition was dismissed. (See Matter of Gaynor Homes, 65 F. 2d 378.) Further, the test of insolvency as defined in section 271 of the Debtor and Creditor Law differs from the test of insolvency as defined in subdivision (19) of section 1 of the Bankruptcy Act (U. S. Code, tit. 11, § 1, subd. [19]). The issues before the Beferee in bankruptcy were entirely different and distinct from the issues here. There is no basis on which to apply the doctrine of res judicata. (Karameros v. Luther, 279 N. Y. 87; Coppola Tidewater Oil Co., 20 A D 2d 127; Mintzer v. Loeb, Rhoades & Co., 10 A D 2d 27.)
Moreover, a finding that HDS was solvent within the meaning of the Bankruptcy Act is not res judicata as to whether the assignment of the accounts receivable without consideration was *669 with intent to defraud, hinder or delay creditors. The allegation and proof that HDS was solvent at the time of the filing of the petition in bankruptcy was a complete defense to the proceedings under the Bankruptcy Act but did not determine whether the assignment was with intent to defraud. The issue in the Bankruptcy Court was whether HDS was solvent; in this court, the issue is intent. (See C. C. H. Bankruptcy Law Rep. No. 37, Aug. 18, 1965.)
Park’s first distinct defense is dismissed on the merits. Motion granted.