Ashley S. ORR, Receiver of American Partners, Inc., Plaintiff–Appellee–Cross–Appellant,

v.

KINDERHILL CORPORATION; Thomas A. Martin; Kinderhill Investment Company; Virginia S. Martin and Vincent Teahan, as Trustee of a Thomas A. Martin Trust, Defendants,

Key Bank of Eastern New York, Defendant–Appellant–Cross–Appellee.

Nos. 864, 1015, Dockets 92–9108, 92–9164.

United States Court of Appeals, Second Circuit.

Argued Jan. 28, 1993.

Decided March 16, 1993.

**32**

After he obtained a judgment against Kinderhill, Orr sued in the District Court for the Northern District of New York (Con. G. Cholakis, *Judge*) to set aside as a fraudulent conveyance Kinderhill's transfer of the property to KIC and KIC's subsequent transfer to Key Bank of a security interest in the real property. The district court granted partial summary judgment to Orr and set aside the transfer of real property, holding: (1) that a six-year limitations period applies to actions under New York Debtor & Creditor Law § 273–a; and (2) that the transfer was not supported by fair consideration and was therefore fraudulent. The district court also granted partial summary judgment to Key Bank on Orr's claim under Debtor & Creditor Law § 273, holding that it was time-barred. Because the transfer of real property and the distribution of stock were an integrated transaction not supported by fair consideration, we now affirm.

Anthony J. Carpinello, Albany, NY (T. Paul Kane, Theresa Atkins, Hiscock & Barclay, Albany, NY, of counsel), for defendant-appellant-cross-appellee.

Robert L. Weigel, New York City (Robin L. Baker, Gibson, Dunn & Crutcher, of counsel), for plaintiff-appellee-cross-appellant.

Before: NEWMAN, WINTER, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge:

Plaintiff Ashley S. Orr, the receiver of American Partners, Inc., is a judgment creditor of defendant Kinderhill Corporation. While Orr's damage action against Kinderhill was pending, Kinderhill deeded certain real property to its wholly-owned subsidiary, defendant Kinderhill Investment Company ("KIC"), for nominal consideration. After the transfer, but before the deeds were recorded, Kinderhill distributed the stock in KIC to Kinderhill stockholders. Key Bank of Eastern New York, with knowledge of these transactions, later lent money to KIC and took back mortgages on the real property as security.

## BACKGROUND

Twenty years ago when limited partnerships were popular as tax shelters, Thomas A. Martin founded Kinderhill. It was to serve as managing general partner in various limited partnerships engaged in thoroughbred breeding and racing. Martin has been the company's president and principal shareholder. Since 1979, Key Bank has been Kinderhill's primary lender.

American Partners, a California corporation, had been a co-general partner with Kinderhill in several limited partnerships. In August 1984, American Partners went into receivership and Orr, as its receiver, sued Kinderhill and Martin in the United States District Court for the Southern District of California (the "California Action") for over one million dollars in management fees that American Partners claimed it was owed.

In December 1985, while the California Action was pending against it, Kinderhill decided to restructure, apparently for tax reasons. Its Board of Directors approved a plan to create a wholly-owned subsidiary (KIC) to which Kinderhill would then transfer the ten tracts of land (totalling 700

acres) it owned in Columbia County, New York (the "New York Property"). To complete the deal, Kinderhill would distribute all its shares in KIC to its own shareholders.

On New Years Eve, 1985, Kinderhill deeded nine of the ten New York tracts to KIC for nominal consideration (one to ten dollars). Nine months later, Kinderhill conveyed the tenth tract to KIC, also for nominal consideration. KIC assumed several outstanding mortgages on the New York Property totalling $780,000, although the land was worth between $3.45 and $4.4 million. KIC did not record the deeds until November 6, 1986 (seven tracts), November 11, 1986 (two tracts), and January 20, 1987 (one tract).

In September 1986, after Kinderhill had deeded the New York Property to KIC, but before the deeds were recorded, Kinderhill approved a plan, effective October 1, 1986, for the distribution of all KIC shares to Kinderhill shareholders. Upon the distribution, KIC and Kinderhill no longer had a formal corporate relationship, although Martin continued to control and operate both companies.

By 1986, Kinderhill had begun to experience financial difficulty as a result of a recession in the thoroughbred industry that was exacerbated by adverse changes in the tax laws. Key Bank watched all this from afar. It had identified the company's cash flow problems as early as 1985, and, indeed, had placed its Kinderhill loans on watch status in March 1986. For the fiscal year ended September 30, 1986, Kinderhill lost $612,825, and had a negative cash flow over twice that amount.

In early 1987, Martin came back to Key Bank for financing, requesting that it provide a $2.5 million revolving line of credit to KIC, secured by the New York Property. Key Bank ordered a title report which disclosed the transfers of the property from Kinderhill to KIC and the nominal consideration paid by KIC. Key Bank also received Kinderhill's audited financial statements for fiscal year 1986, which disclosed that "[t]he Court [adjudicating the California Action] has indicated that it has decided to grant judgement [sic] to the plaintiff in an amount approximating $1,250,000...." Key Bank approved the loan and, on March 13, 1987, KIC gave Key Bank a $2.5 million mortgage on the New York Property to secure advances under the line of credit.

On June 17, 1987, Orr obtained a judgment in the California Action against Kinderhill individually for $159,338, and against Kinderhill and Martin, jointly and severally, for $1,071,489, plus prejudgment interest. The Ninth Circuit subsequently affirmed that judgment, but Orr has been able to collect only $42,000 from Kinderhill and Martin.

In March 1991, Orr brought the present action against Kinderhill, KIC, Key Bank, Martin, his wife, and the trustee of a trust established by Martin, seeking to set aside several transfers of property (including Kinderhill's transfers of the New York Property to KIC) as fraudulent under Debtor & Creditor Law §§ 273 and 273–a. After some discovery, both Orr and Key Bank moved for summary judgment on the claims relating to the validity of Key Bank's mortgages. Key Bank asserted several affirmative defenses, including a claim that Orr's action was barred by the applicable statutes of limitations.

In an opinion and order dated August 26, 1991, Judge Cholakis denied the summary judgment motions. He held that the six-year limitations period of N.Y.Civ.Prac.L. & R. ("CPLR") § 213(1) applied to fraudulent conveyance actions under both sections 273 and 273–a. First, there being no evidence that Key Bank was amenable to suit in California, he rejected Key Bank's claim that California's four-year limitations period applied to the section 273 claim under New York's borrowing statute, CPLR § 202. *See Stafford v. International Harvester Co.,* 668 F.2d 142, 152 (2d Cir.1981) ("New York's borrowing statute does not require the application of the statute of limitations of a jurisdiction if the cause of action could never have been brought in that jurisdiction."). Second, he held that Orr's section 273–a claim was controlled by CPLR § 213(1)'s six-year limitations period, not CPLR § 214(2)'s three-year period gov-

erning causes of action created by statute. On the other hand, he denied plaintiff Orr's motion for summary judgment because there were questions of fact regarding whether KIC gave fair consideration for the New York Property.

After further discovery and additional submissions to the court, both parties renewed their motions for summary judgment. In an opinion and order dated March 30, 1992, Judge Cholakis granted summary judgment to plaintiff Orr on his 273-a claim, concluding that KIC had not given "fair consideration" for the New York Property. The district court granted defendant Key Bank summary judgment on Orr's section 273 claim, thereby reversing itself on the statute-of-limitations issue. Judge Cholakis held that, because Key Bank had now demonstrated that it was amenable to jurisdiction in California, the action could have been brought there and, therefore, New York's borrowing statute did apply. Because Orr's section 273 claim was untimely under the California limitations period of four years, the court concluded that Key Bank was entitled to summary judgment.

Judge Cholakis entered a partial summary judgment reflecting his opinion and he certified an interlocutory appeal under Fed.R.Civ.P. 54(b). On appeal, Key Bank challenges Judge Cholakis's award of summary judgment to Orr on his section 273-a claim; and Orr cross-appeals Judge Cholakis's award of summary judgment to Key Bank on the section 273 claim.

## DISCUSSION

*Statute of Limitations*

█ Key Bank argues that Orr's claim under Debtor & Creditor Law § 273-a was barred by CPLR § 214(2), which imposes a three-year statute of limitations on "an action to recover upon a liability, penalty or forfeiture created or imposed by statute." We agree with the district court, however, that the three-year period governing liability created by a statute does not apply to an action by a judgment creditor to set aside a fraudulent conveyance.

█ CPLR § 214(2) "does not apply to liabilities existing at common law which have been recognized or implemented by statute." *State v. Danny's Franchise Sys., Inc.*, 131 A.D.2d 746, 746, 517 N.Y.S.2d 157, 158 (2d Dept.1987), *appeal dismissed*, 70 N.Y.2d 940, 524 N.Y.S.2d 672, 519 N.E.2d 618 (1988). Rather, section 214(2) applies only when a statute creates a new liability that did not exist at common law and would not exist but for the statute. *See Aetna Life & Casualty Co. v. Nelson*, 67 N.Y.2d 169, 174, 501 N.Y.S.2d 313, 315, 492 N.E.2d 386, 388 (1986); *Danny's Franchise Sys.*, 131 A.D.2d at 746, 517 N.Y.S.2d at 158. Moreover, " 'the statute must be essential to the cause of action' [and] . . . . the statutory liability must truly be new." *Practice Commentaries*, CPLR § 214:2, at 521 (quoting *Bryden v. Wilson Memorial Hosp.*, 136 A.D.2d 843, 523 N.Y.S.2d 686 (3d Dept.1988)). That the statute merely enlarges the common-law scheme of liability or grants additional remedies is insufficient to bring it within CPLR § 214(2). *State v. Cortelle Corp.*, 38 N.Y.2d 83, 86–87, 378 N.Y.S.2d 654, 656–57, 341 N.E.2d 223, 224–25 (1975); *Danny's Franchise Sys.*, 131 A.D.2d at 747, 517 N.Y.S.2d at 159; *State v. Bronxville Glen I Assocs.*, 181 A.D.2d 516, 581 N.Y.S.2d 189, 190 (1st Dept.1992).

Section 273–a provides:

Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y.Debtor & Creditor Law § 273–a.

When Debtor & Creditor Law § 273–a was enacted in 1961, the liability it imposed was not novel. Fraudulent conveyance actions were common in New York long before 1961. *See, e.g., Buttles v. Smith*, 281 N.Y. 226, 22 N.E.2d 350 (1939); *Farmers' Loan & Trust Co. v. Meyer*, 222 A.D. 123, 225 N.Y.S. 561 (1st Dept.1927); *West Shore Furniture Co. v. Murphy*, 141 N.Y.S. 835

(Sup.Ct.Ulster County 1913). Indeed, nearly four hundred years ago, the infamous Star Chamber declared fraudulent a conveyance by a debtor of all his goods and chattels to one creditor during the pendency of another creditor's action. *Twyne's Case,* 76 Eng.Rep. 809 (Star Chamber 1601); *see also Hadlock v. Eric,* 23 F.Supp. 692, 693 (S.D.N.Y.1938) ("section 273 of the Debtor and Creditor Law does not itself create new liabilities but was a codification of and the embodiment of existing presumptions established by a long line of decisions of the courts of the State of New York"). Section 273–a simply fleshed out the meaning of a fraudulent conveyance by stigmatizing certain conveyances made during litigation. Thus, CPLR § 214(2) does not apply to actions under Debtor & Creditor Law § 273–a.

■ We agree with the district court that actions under section 273–a are governed by the six-year limitations period of CPLR § 213(1). *See Martin v. Martin.* 29 A.D.2d 864, 865, 288 N.Y.S.2d 374, 376 (2d Dept.1968), *aff'd in relevant part, modified on other grounds,* 23 N.Y.2d 858, 298 N.Y.S.2d 68, 245 N.E.2d 801 (1969); *RCA Corp. v. Tucker,* 696 F.Supp. 845, 857 n. 9 (E.D.N.Y.1988). An action to set aside a fraudulent conveyance under section 273–a is an action for constructive fraud. *See Republic Ins. Co. v. Levy,* 69 Misc.2d 453, 454, 329 N.Y.S.2d 918, 922 (Sup.Ct.Rockland Cty.1972). *Compare* Debtor & Creditor Law §§ 276 (governing actual fraud) & 276–a (authorizing award of attorneys' fees for proof of actual fraud under § 276). And actions for constructive—rather than actual—fraud have long been subject to the catch-all limitations period of CPLR § 213(1), *see Dolmetta v. Uintah Nat'l Corp.,* 712 F.2d 15, 18 (2d Cir.1983); *Dybowski v. Dybowska,* 146 A.D.2d 604, 605, 536 N.Y.S.2d 838, 839 (2d Dept.1989), and its predecessor, Civ.Prac.Act § 53. *See Hearn 45 St. Corp. v. Jano,* 283 N.Y. 139, 144, 27 N.E.2d 814, 817 (1940); *Buttles,* 281 N.Y. at 236, 22 N.E.2d at 353; *McCabe v. Gelfand,* 58 Misc.2d 497, 499, 295 N.Y.S.2d 583, 585 (Sup.Ct.Kings County 1968). *See generally* Samuel M. Hesson, *The Statute of Limitations in Actions to Set Aside Fraudulent Conveyances and in Actions Against Directors by Creditors of Corporations,* 32 Cornell L.Q. 222, 224–27 (1946); Note, *Statutory Limitation for Fraud Actions,* 13 St.John's L.Rev. 114, 115–19 (1938).

*Fair Consideration*

Key Bank also argues that the district court erred by holding that Kinderhill's conveyance of the New York Property to KIC was not supported by fair consideration. In the eyes of Key Bank, the transfer to KIC instantly inflated the value of KIC shares held by Kinderhill, thereby providing the requisite fair consideration. We need not address this argument, however, because we will not turn a blind eye to the reality that the transfer of the New York Property and the spin-off of KIC shares constituted a single, integrated transaction. This transaction, viewed in its entirety, was not supported by fair consideration.

■ In equity, "substance will not give way to form, [and] technical considerations will not prevent substantial justice from being done." *Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939); *see also Dean v. Davis,* 242 U.S. 438, 443, 37 S.Ct. 130, 131, 61 L.Ed. 419 (1917); *Warren v. Union Bank of Rochester,* 157 N.Y. 259, 270–71, 51 N.E. 1036, 1039 (1898). Thus, an allegedly fraudulent conveyance must be evaluated in context; "[w]here a transfer is only a step in a general plan, the plan 'must be viewed as a whole with all its composite implications.'" *Pereira v. Checkmate Communications Co. (In re Checkmate Stereo & Elec., Ltd.),* 9 B.R. 585, 612 (Bankr.E.D.N.Y.1981) (quoting *Buffum v. Peter Barceloux Co.,* 289 U.S. 227, 232, 53 S.Ct. 539, 541, 77 L.Ed. 1140 (1933)), *aff'd,* 21 B.R. 402 (E.D.N.Y.1982); *accord Yoder v. T.E.L. Leasing, Inc. (In re Suburban Motor Freight, Inc.),* 124 B.R. 984, 998 (Bankr. S.D.Ohio 1990); *Gafco, Inc. v. H.D.S. Mercantile Corp.,* 47 Misc.2d 661, 664–65, 263 N.Y.S.2d 109, 114 (N.Y.Civ.Ct.1965); *Gruenebaum v. Lissauer,* 185 Misc. 718, 728, 57 N.Y.S.2d 137, 145 (Sup.Ct.N.Y.County 1945), *aff'd,* 270 A.D. 836, 61 N.Y.S.2d 372 (1st Dept.1946).

■ The record is clear that Kinderhill's conveyance of the New York Property to

KIC and Kinderhill's subsequent distribution of KIC shares were elements of a single restructuring plan adopted by Kinderhill's board of directors in December 1985. Key Bank acknowledged as much, both in contemporaneous internal lending documents and at oral argument. So viewed, the restructuring was not supported by fair consideration for, in effect, it was a gratuitous transfer of the New York Property by Kinderhill.

We recently analyzed a similar transaction in the tax context. *See Salomon Inc. v. United States*, 976 F.2d 837 (2d Cir. 1992). As part of a corporate restructuring, Salomon transferred certain assets to a newly formed subsidiary and then spun-off the subsidiary to its shareholders. We rejected Salomon's invitation to analyze the two steps of the transaction separately for tax purposes: "[i]n substance, if not in form, the direct and the circuitous transaction are the same. Each achieves a rapid transfer of . . . property outside the [corporate] group. To distinguish between them would deny economic reality." *Id.* at 842 (citations omitted) (taxpayer required to pay back tax benefits associated with assets transferred out of corporate group); *see also Shapiro v. Wilgus*, 287 U.S. 348, 353–54, 53 S.Ct. 142, 143–44, 77 L.Ed. 355 (1932); *Gruenebaum*, 185 Misc. at 728, 57 N.Y.S.2d at 145.

We reach the same conclusion here. The net effect of Kinderhill's restructuring was the transfer of the New York Property without any corresponding benefit to Kinderhill. Thus, as the bank knew prior to the mortgages, *see* Debtor & Creditor Law § 278(1), the transaction was not supported by fair consideration, and, accordingly, the district court properly set it aside as a fraudulent conveyance under Debtor & Creditor Law § 273–a. *See* 1 Garrant Glenn, *Fraudulent Conveyances and Preferences* § 195, at 348 (rev. ed. 1940) ("real test of a fraudulent conveyance . . . is the unjust diminution of the debtor's estate"); *see, e.g., United Towing Co. v. Phillips*, 242 F.2d 627, 631–32 (5th Cir.), *cert. denied*, 355 U.S. 861, 78 S.Ct. 93, 2 L.Ed.2d 68 (1957); *Republic Ins. Co. v. Levy*, 69 Misc.2d at 450–51, 329 N.Y.S.2d at 918–20; *In re Campbell's Estate*, 164 Misc. 632, 299 N.Y.S. 442 (Sur.Ct.N.Y.County 1937); *cf. Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir.1983) (transferring assets beyond creditors' reach without consideration received in exchange is fraudulent).

## CONCLUSION

In sum, we hold that the district court correctly applied a six-year limitations period to Orr's claim under Debtor & Creditor Law § 273–a. Because Kinderhill's transfer of the New York Property and subsequent distribution of KIC shares were an integrated transaction, not supported by fair consideration, we affirm the district court's award of summary judgment to Orr on his claim under Debtor & Creditor Law § 273–a. In view of our affirmance on the appeal, the cross-appeal, which seeks no additional relief, is moot.